No. 98,026

STATE OF KANSAS, *Appellee*, v. CHRISTOPHER D. GANT, *Appellant*.

(201 P.3d 673)

Opinion filed January 30, 2009.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, argued the cause, and *Matthew J. Edge*, of the same office, was on the brief for the appellant, and *Christopher D. Gant*, appellant, was on a supplemental pro se brief.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Stephen N. Six*, attorney general, were with him on the brief for the appellee.

The opinion of the court was delivered by

ROSEN, J.: Christopher D. Gant appeals to this court from his conviction and sentence for one count of felony murder, K.S.A. 21-3401(b), and one count of attempted aggravated robbery,

K.S.A. 21-3427. Jurisdiction lies with this court under K.S.A. 22-3601(b)(1).

On March 20, 2006, Gant drove three other men, Jeremy Miles, Kendrall Ransom, and Karlan Ransom to a house on North Lorraine Street in Wichita, Kansas. The men had previously armed themselves, and Gant believed they were "going to go probably rob somebody and get the money." After noting that they might have been observed, Kendrall Ransom directed Gant to drive them to a house on North Kansas Street. There they saw Donta McDonald leave the house and walk to a truck in the driveway. Gant and the other occupants of the car approached the truck, and Gant heard the other men demand money. After making the demand for money, the men saw McDonald reach under the seat of his truck, at which time one of the men fired two shots from a shotgun, killing McDonald.

Gant and the other men returned to their car without taking any money from McDonald. Gant drove them back to the house on North Lorraine, where they observed people walking in and out of the house. Gant announced that he had to pick up his child and needed to leave, and he drove them to another address. Watching the 10 p.m. news that night, Gant learned a murder had also been committed on North Lorraine after he had left the other men.

On June 7, 2006, the State filed an information charging Gant, Miles, and the Ransoms each with one count of felony murder in the death of McDonald and one count of attempted aggravated robbery. The other defendants were also charged with various additional crimes, including felony murder in the death of Christopher Spain Bey.

A jury found Gant guilty of both counts, and the district court sentenced him to a term of life imprisonment for the felony murder and a consecutive term of 34 months in prison for the attempted aggravated robbery. He took a timely notice of appeal.

Gant initially argues that the district court erroneously admitted certain statements of his into evidence because he had requested counsel prior to a custodial interview.

During an interview with Detective Timothy Relph and Detective Heather Bachman conducted early in the morning of March

26, 2006, Gant explained in detail his role in the shootings. The interview with police detectives was apparently videotaped, but the tape is not included in the record on appeal, and the record contains no transcript of the interview. The record shows that Gant confirmed that he provided the transportation for all the men to the scenes of both murders. He acknowledged that they brought firearms with them and that he was carrying a firearm at the scene of McDonald's murder.

Gant filed a motion to suppress the interview statements. The district court conducted an evidentiary hearing to determine whether Gant requested an attorney and whether he waived his right to an attorney before or during the interview.

The district court heard testimony that police waited outside an apartment complex and observed a man who they believed was Gant going back and forth between the complex and a car. He and two women then got into the car. The police approached the car, pointed service weapons at Gant, and told him to keep his hands in plain view and get out of the car. As Gant was getting out of the car, the police overheard him calling out to the women that he loved them, that he loved his children, that he was sorry, that they were to call another individual, and that they were to call a lawyer.

The arresting officer testified that Gant did not request that the police call a lawyer. One of the women in the car, who was Gant's girlfriend and the mother of one of his children, testified that Gant told the police that he wanted to talk to a lawyer. Gant testified that, after the police handcuffed him outside his car, they informed him of his rights, and he requested a lawyer. He testified that he again requested a lawyer when he got into the police car.

The arresting officer explained to the interviewing detectives that Gant had requested that his female companions call a lawyer. Before interviewing Gant at the police department, Detective Bachman read him his *Miranda* rights. Gant informed her that he understood each of his rights, and he placed his initials next to the enumerated rights written on a card. He told the detectives that he was ready to speak with them at that time, and he signed the card. Gant conceded that he did not tell the interviewing detectives that he wanted to speak to a lawyer.

The district court found it "more probably true than not that the defendant made a statement to the two ladies in the car about contacting a lawyer." The court concluded that Gant did not tell the police that he wanted to speak to a lawyer or that he would not answer questions without speaking to a lawyer first—"there was no unambiguous request for counsel." The court noted that Gant and his girlfriend had a personal interest in testifying that he requested an attorney at the time of his arrest; the court also noted that Gant did not request counsel at the time that he was interviewed, that he specifically waived his right to counsel at the time of the interview, and that he had significant experience with the arrest and interview process.

When reviewing a district court ruling on a motion to suppress a confession, an appellate court reviews the factual underpinnings of the decision under a substantial competent evidence standard. The ultimate legal conclusion drawn from those facts is reviewed de novo. The appellate court does not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence. *State v. Brown*, 285 Kan. 261, 271-72, 173 P.3d 612 (2007).

The Fifth Amendment to the United States Constitution provides defendants in criminal prosecutions with protection from self-incrimination, protection that includes the right to have an attorney present during custodial interrogation and the right to remain silent pursuant to *Miranda v. Arizona*, 384 U.S. 436, 479, 16 L. Ed. 2d 694, 86 S. Ct. 1602, *reh. denied* 385 U.S. 890 (1966). A suspect may invoke the *Miranda* right to counsel at any time, requiring at a minimum "some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." *McNeil v. Wisconsin*, 501 U.S. 171, 178, 115 L. Ed. 2d 158, 111 S. Ct. 2204 (1991). The suspect must articulate the request for counsel with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney, and the request must be for counsel to be present at the custodial interrogation, not for subsequent hearings or proceedings. *State v. Walker*, 276 Kan. 939, 945, 80 P.3d 1132 (2003)

(citing *Davis v. United States*, 512 U.S. 452, 459, 129 L. Ed. 2d 362, 114 S. Ct. 2350 [1994], and *McNeil*, 501 U.S. at 178).

When a suspect makes a statement that might be ambiguous as to whether the suspect is asserting a right to remain silent or to confer with an attorney, the interrogator is permitted to ask clarifying questions but is not required to clarify the ambiguous statement. *State v. Gonzalez*, 282 Kan. 73, 106, 145 P.3d 18 (2006).

Gant asks this court to reweigh the district court's finding that his request for counsel was directed to the women in the car instead of to police. Substantial evidence supports the district court's finding. Gant was presumably not telling the police that he loved them, that he loved his children, that he was sorry, and that they were to call another individual; it was reasonable to assume that his connected statement requesting that someone obtain a lawyer for him was also not directed to the police. The request was *at best* ambiguous. The arresting officer testified that Gant made no other request for counsel; his testimony was substantial and competent.

In addition, Gant made no unambiguous request for counsel to assist him at a custodial interrogation. He was being taken into custody at gunpoint at the time he asked the occupants of his car to call an attorney, and no interrogation took place until later at the police department. When the interrogation began, detectives went over his *Miranda* rights with him, and he explicitly waived them.

It is inappropriate for this court to reweigh the evidence, and the district court's legal conclusions were soundly based on the evidence before it.

Gant next argues that his trial was improperly prejudiced by Detective Bachman's proximity to the prosecution prior to her testimony. It appears from a passing reference during trial testimony that Detective Bachman sat at the end of the table with counsel for the State. The issue was not preserved through a contemporaneous objection and is not properly before this court.

When the defendant has lodged an objection, the standard of review for a decision by a district court to allow a witness to sit at the table with counsel is abuse of discretion. *State v. Kirkpatrick*, 286 Kan. 329, 342-43, 184 P.3d 247 (2008). Judicial discretion is

abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *State v. Reed*, 282 Kan. 272, 280, 144 P.3d 677 (2006).

When a constitutional or a statutory right is involved, the discretion of the district court is limited. Under those circumstances, there is a greater need for the trial judge to articulate the reasons for any discretionary decision. *In re Adoption of B.G.J.*, 281 Kan. 552, 563, 133 P.3d 1 (2006). When the issue is not raised to the district court, however, the trial judge does not have the opportunity to articulate reasons for the discretionary decision. Constitutional grounds for reversal asserted for the first time on appeal are therefore not properly before the appellate court for review. *State v. Gaudina*, 284 Kan. 354, 372, 160 P.3d 843 (2007).

Gant fails to proffer any specific evidence suggesting that his defense was prejudiced by Detective Bachman's presence at the prosecution table. In fact, it is unclear from the record how long the witness sat at the prosecution table or what her proximity was to counsel. Although it is the "better practice" to discourage law enforcement witnesses from sitting at the prosecutor's table during a jury trial, the practice does not constitute per se abuse of discretion. *Kirkpatrick*, 286 Kan. at 343. In the absence of any specific allegations of prejudice, Gant does not raise an issue stating reversible error. The issue is not properly before this court.

Notwithstanding the imposition of a life imprisonment sentence for the felony-murder conviction, an off-grid person felony, Gant next challenges the constitutionality of his "aggravated" sentence for his attempted aggravated robbery conviction, contending that imposition of the high end of the sentencing grid without submitting to a jury the grounds for an aggravated sentence violates constitutional provisions for trial by jury.

This court has recently addressed this issue and has taken a position adverse to Gant's argument: "A sentence to any term within the range stated in a Kansas sentencing guidelines presumptive grid block does not violate *Cunningham v. California*, 549 U.S. 270, 166 L. Ed. 2d 856, 127 S. Ct. 856 (2007), or *Apprendi v. New*

*Jersey,* 530 U.S. 466, 490, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000)." *State v. Johnson,* 286 Kan. 824, Syl. ¶ 5, 190 P.3d 207 (2008); see *State v. Cook,* 286 Kan. 1098, Syl. ¶ 8, 191 P.3d 294 (2008); *State v. Gallegos,* 286 Kan. 869, Syl. ¶ 10, 190 P.3d 226 (2008).

The trial court did not err in sentencing Gant to the high end of the grid box sentence on his attempted aggravated robbery conviction.

In addition to the argument raised by his counsel, this court granted Gant leave to file a supplemental brief on his own behalf. He argues that the jury received insufficient evidence to sustain his convictions.

Gant argues that he did not approach the victim, he did not attempt to take property from the victim, he did not harm the victim, and he did not have a weapon when the victim was murdered and he, therefore, cannot be found guilty of either murder or attempted robbery.

When a defendant challenges the sufficiency of the evidence in a criminal case, the standard of review is whether, after reviewing all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Gutierrez,* 285 Kan. 332, 336, 172 P.3d 18 (2007).

A person is criminally responsible for a crime committed by others if that person intentionally aids and abets another in the commission of that crime. A person who aids and abets in committing the crime may be charged either as a principal or as an aider and abettor. *State v. Green,* 254 Kan. 669, 687, 867 P.2d 366 (1994). The element of intent necessary to obtain a conviction for aiding and abetting may be inferred from circumstantial evidence. *State v. Goering,* 225 Kan. 755, Syl. ¶ 2, 594 P.2d 194 (1979)

The district court instructed the jury on a theory of aiding and abetting:

"A person who, either before or during its commission, intentionally aids or abets another to commit a crime with intent to promote or assist in its commission is criminally responsible for the crime committed regardless of the extent of the defendant's participation, if any, in the actual commission of the crime."

Abundant evidence supported the jury's finding that Gant aided and abetted the commission of felony murder and attempted aggravated robbery. In his statements to police, Gant said he knew that the group of men intended to carry out a robbery. He drove the car to the scene of the initial intended robbery, intending to drive them away at the conclusion of a robbery. He drove the men to the scene of the murder and drove them away after one of the men shot the victim. He acknowledged that he was carrying a loaded .40-caliber handgun. He also acknowledged that he was not threatened by the other men, and he was not afraid that they would harm him if he did not drive them where they wanted to go.

Acting as the driver of a vehicle transporting other perpetrators to and from the commission of a crime may suffice to support a conviction for aiding and abetting the commission of the crime. See *Goering*, 225 Kan. at 758; *State v. Burton*, 35 Kan. App. 2d 876, 881, 136 P.3d 945, *rev. denied* 282 Kan. 792 (2006); *State v. Percival*, 32 Kan. App. 2d 82, 95, 79 P.3d 211 (2003), *rev. denied* 277 Kan. 927 (2004).

The evidence before the jury more than sufficed to support his convictions based on aiding and abetting.

Gant finally argues that the district court erred when it sentenced him for felony murder before it accepted a plea from another defendant that did not include a felony-murder charge. He submits that it was fundamentally unfair for the district court to try and sentence him for felony murder, when another perpetrator, Jeremy Miles, subsequently agreed to plead guilty to other charges in exchange for the State dismissing felony-murder charges against him.

It is unclear how the district court was to take into account at sentencing a sentence not yet imposed on another defendant who had not yet entered a guilty plea. When a defendant is convicted of felony murder and his accomplices plead guilty to less serious offenses, there is no rational basis for comparing their sentences and the district court is under no requirement to explain disparities among the sentences. *State v. Gleason*, 277 Kan. 624, 656, 88 P.3d 218 (2004). It would be improper to require a district court to take into account a conviction and sentence not yet entered against an-

other defendant when imposing its sentence on the subject defendant.

Gant also contends that he should have been offered the same kind of plea agreement to which Miles agreed, and the State's failure to do so constituted discriminatory or selective prosecution.

In order to assert a defense of discriminatory prosecution, a defendant must show that others who are similarly situated are generally not prosecuted for conduct similar to the conduct for which the defendant is being prosecuted and that the defendant has been intentionally and purposefully singled out for prosecution on the basis of arbitrary or invidious criteria. *State ex rel. Murray v. Palmgren*, 231 Kan. 524, 528, 646 P.2d 1091 (1982). An allegation of discriminatory prosecution grounded only on speculation and lacking evidence in the record supporting the claim fails to meet a defendant's burden to show prejudicial error. *State v. Castoreno*, 255 Kan. 401, 413-14, 874 P.2d 1173 (1994); *State v. Bailey*, 251 Kan. 527, 530, 834 P.2d 1353 (1992).

Gant points to no evidence showing what plea agreements were offered to him or what the conditions of Miles' plea agreement were. He also offers no evidence tending to prove that the State singled him out for prosecution based on arbitrary or invidious criteria. His only claim is based on the fact that Miles entered into a plea agreement after Gant was convicted, and this does not constitute proof of discriminatory prosecution.

Finding no reversible error, we affirm both convictions and Gant's sentence for attempted aggravated robbery.

McFarland, C.J., not participating.

Marquardt, J., assigned.