(218 P.3d 457)
No. 100,703

STATE OF KANSAS, *Appellee*, v. RUBEN MARIO RIVERA, *Appellant*.

Opinion filed November 6, 2009.

*Carl F.A. Maughan*, of Maughan & Maughan LC, for the appellant.

*Ty Kaufman*, special prosecutor, and *Steve Six*, attorney general, for the appellee.

Before MALONE, P.J., PIERRON and LEBEN, JJ.

PIERRON, J.: Ruben Mario Rivera appeals his conviction of aggravated criminal threat. We affirm.

May 1, 2007, an apparent bomb threat was called in to the Johns-Manville fiberglass insulation manufacturing plant (J-M plant) in McPherson. Richard Carlson, crew chief at the J-M plant, answered the call in the production office. The caller was male. The conversation lasted about 5 seconds. Carlson testified to what was said in the conversation during direct examination:

"Q. Now, tell us first of all, what you said when you answered the phone?
"A. 'Johns-Manville production office, this is Rich Carlson.'
"Q. Okay. And was there a conversation after you said that?
"A. Yes.
"Q. What was the conversation?
"A. Caller said 'you have a bomb in the plant, get everybody out.'
"Q. When the caller said that what was your reaction or what did you say, if anything?
"A. I said 'Are you serious?'

. . . .

"Q. Was there any other conversation after you said 'are you serious'?
"A. No. The caller hung up."

Carlson did not recognize the voice, although the direct style of speaking reminded him of Pat Johnson, a supervisor at the J-M plant. The call came in on a phone with an unlisted number; the number had been given to only employees, so they could call in sick. The unlisted number had been given previously to employees of a temporary-employment agency. Carlson testified that the call came in around 5:17 p.m.

The J-M plant was shut down, evacuated, and checked for a bomb by police officers and bomb-sniffing dogs. No bomb was found at the plant. Employees gathered across the street from the J-M plant while the building was searched. Mark Luttig, a J-M employee, was not allowed into the plant to start his shift because of the bomb threat, so he waited with the other employees outside. At 6:12 p.m., while standing outside the plant during the evacuation, Luttig called Rivera on his cell phone. Luttig told Rivera about the bomb threat at the plant and then told him to "get in his car and take off." Luttig said he was joking around, and told Rivera to get out of town because Rivera had been recently fired from the J-M plant. Scott Vogts, another J-M plant employee, heard Luttig on the phone with Rivera and also spoke with Rivera on the phone.

Vogts, too, told Rivera that a bomb threat had been made at the J-M plant.

The initial investigation into the call showed that it came from 620-794-9999. Rivera states in his brief that this phone number belonged to a Michael Clinger. At the preliminary hearing, Detective Frazier testified that Clinger had the same phone number; however, an investigation of Clinger's phone records showed the call did not come from his phone. The number turned out to be an internal access number, used by ATT on the J-M plant's phone records to show that the call came from another phone network. The 794-9999 number was used by ATT to show that the call was made by an Alltel phone. When the call was investigated through Alltel's records, detectives learned that the actual phone number the call originated from was Rivera's cell phone number. Rivera's phone records show that a call was made from his cell phone to the unlisted number at the J-M plant from 5:17 p.m. until 5:18 p.m. on May 1, 2007. Rivera's phone records also show a phone call made to his daughter 10 minutes after the bomb threat and a phone call made to his girlfriend 37 minutes before the bomb threat. The records also showed the incoming call from Luttig's phone less than an hour after the bomb threat.

Rivera had worked at the J-M plant for almost 14 years. On January 8, 2007, he walked off the job. Rivera was not immediately terminated, but went through a voluntary assistance program at the plant to try to regain his employment. Rivera was not reinstated to his prior position after he completed the assistance program. Instead, he was terminated on March 7, 2007.

When Detectives Darren Frazier and Doug Anderson talked to Rivera about the bomb threat, he initially denied he was Ruben Rivera. However, Anderson recognized Rivera because he had seen Rivera's mug shot before. The detectives questioned Rivera about his cell phone and the bomb threat. Rivera said he did not know anything about the threat. He said no one else had used his phone, but he had lost his phone for a period of 7 to 10 days. He did not specify the dates of when his phone was lost. Rivera had his cell phone with him on May 24, 2007, when he was interviewed by Frazier and Anderson. He said he'd found the phone in the

back of his truck. After examining the phone records, detectives did not notice any disruption in the service pattern of Rivera's cell phone for any 7- to 10-day period either before or after May 1, 2007.

Rivera was charged with one count of aggravated criminal threat under K.S.A. 21-3419a. He was charged with a severity level 5, person felony because the loss of productivity measured by the total wages and salaries of all persons evacuated due to the threat was less than $25,000 but more than $500. See K.S.A. 21-3419a(c).

. Before trial, the district court ruled that Detective Anderson could not volunteer the fact that he had seen Rivera's mug shot because that might make it look like Rivera had a prior criminal record. At the jury trial, the State called Anderson to testify. On direct examination, Anderson made no reference to having seen Rivera's mug shot. Anderson did mention the mug shot during cross-examination:

"Q. Now you said that one of the first questions that, well, you said that Ruben did talk to you and Detective Frazier, right?

"A. Yes.

"Q. And at some point did he say 'I am Ruben Rivera'?

"A. No, he, when he said no, I had, I didn't know Mr. Rivera prior to this —

"Q. No, no, did he ever say 'I am Ruben Rivera'?

"A. I was getting ready to answer that. Because what I said to him then, 'I know you're Ruben Rivera' because I recognize him from his mug shot.

"THE COURT: Members of the jury, you are instructed to disregard the last statement made by this witness. It has no relevance to this particular case and you are instructed to disregard it."

Rivera did not object to Anderson's statement and did not move for a mistrial.

Rivera's phone records were admitted into evidence after being explained by an Alltel store manager. One record was Rivera's customer bill for April 17 through May 16, and was called the "toll record" at trial. Another record was a "switch record" that showed the length of the calls on Rivera's phone and if they were incoming or outgoing calls. The third record admitted into evidence was a "still frame" of Rivera's account information, showing his subscription information but nothing about the calls he had made or received.

The switch record showed a 2-minute phone call from Rivera's phone at 5:28 p.m. on May 1, 2007; the toll record does not show that call. The Alltel manager was unable to explain the inconsistency between the two records, but he stated that he believed both could still be accurate. Both records showed the call from Rivera's phone to the J-M plant at 5:17 p.m. on May 1, 2007. Rivera objected to the records, claiming they were unreliable and lacked proper foundation for admission.

The jury found Rivera guilty of aggravated criminal threat, and he was sentenced to 34 months in prison. Rivera's motion for a new trial was denied.

Rivera first argues there is insufficient evidence of guilt to uphold his conviction. He relies on *State v. Williams*, 229 Kan. 290, 296, 623 P.2d 1334 (1981), *reh. denied* 229 Kan. 646, 630 P.2d 694 (1981) (stating that the appellate court will look only to evidence in favor of the verdict, and that the conviction will be upheld if supported by any competent evidence).

The proper standard of review is "whether after reviewing all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Gant*, 288 Kan. 76, 83, 201 P.3d 673 (2009). There is no requirement that a criminal defendant challenge the sufficiency of the evidence before the trial court to preserve the issue for appeal. *State v. Farmer*, 285 Kan. 541, 545, 175 P.3d 221 (2008). Also, a conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Scaife*, 286 Kan. 614, 618-19, 186 P.3d 755 (2008).

Under the statute, aggravated criminal threat "is the commission of one or more crimes of criminal threat, as defined in K.S.A. 21-3419 and amendments thereto, when a public, commercial or industrial building, place of assembly or facility of transportation is evacuated as a result of the threat or threats." K.S.A. 21-3419a(a). A criminal threat is any threat to "[c]ommit violence communicated with intent to terrorize another, or to cause the evacuation of any building, place of assembly or facility of transportation, or in reckless disregard of the risk of causing such terror or evacua-

tion," but a threat also includes "any statement that one has committed any action described by subsection (a)(1)." K.S.A. 21-3419(a)(1) and (c).

Rivera contends that the statement: "You have a bomb in the plant. Get everyone out," was not a threat under Kansas law and, thus, there was insufficient evidence to convict him.

Rivera claims the statement was "simply a warning of an existing state," and thus does not fall within the statutory definition of threat. Rivera contends that to be a threat under Kansas law, the statement must have included some forecast of future violence or criminal action—such as, "I will detonate a bomb" or "I am going to cause an explosion." He contends the legislature did not intend the "absurd or illogical results" that he claims occurred in this case. The legislature, Rivera argues, did not want to punish Good Samaritans who merely warn of a bomb's existence. Rivera provides no case law or legislative history to back up this argument. Nor does he explain how he was a Good Samaritan. The Kansas Supreme Court, however, has noted that K.S.A. 1971 Supp. 21-3419 was directed at bomb threats. *State v. Gunzelman*, 210 Kan. 481, 486, 502 P.2d 705 (1972). The 1971 statute is not materially different from the version at issue.

Also cutting against Rivera's argument is the Kansas Supreme Court's definition of threat:

"The general rule is that a threat otherwise coming within the purview of a statute need not, unless the statute expressly so requires, be in any particular form or in any particular words, and it may be made by innuendo or suggestion, and need not be made directly to the intended victim. [Citations omitted.]" *State v. Knight*, 219 Kan. 863, 866, 549 P.2d 1397 (1976); *State v. Chambers*, No. 96,370, unpublished Court of Appeals opinion filed May 9, 2008, slip op. at 23.

In this case, it takes no great stretch of the imagination to understand the caller's intent: by stating that a bomb was inside the plant and that everyone should get out, he made an innuendo or suggestion that he would make the bomb explode. The statement: "You have a bomb in the plant. Get everyone out," was a threat. It was not, as Rivera argues, a simple warning of an existing state. This is particularly true as there apparently was no bomb in the building.

Further, "in determining whether a criminal threat occurred, all circumstances should be considered and the relationship of the parties was a part of the mix." *Chambers*, slip op. at 23. (citing *State v. Miller*, 6 Kan. App. 2d 432, 435, 629 P.2d 748 [1981]). Looking at all the other relevant facts in the light most favorable to the prosecution, there is more than sufficient evidence to find that Rivera made the bomb threat to the J-M plant. Rivera's cell phone records showed a call made to the J-M plant at 5:17 p.m. on May 1, 2007. Rivera told both of the police detectives that no one else had used his phone during the relevant time frame. While the initial investigation into the phone call turned up a different phone number, that number was not an actual number but was instead a transfer number used by J-M's phone carrier to show that the call had been made by a phone on the Alltel network.

Rivera said he had lost his phone for a period of 7 to 10 days around the time the bomb threat was made. However, Rivera's phone was used to call his girlfriend 37 minutes before the threat was made and to call his daughter 10 minutes after the threat was made. Most telling, Rivera received a call on his cell phone from Luttig and Vogts at 6:12 p.m. the same day, and the three of them spoke on the phone for 4 minutes. Further, Rivera had been fired from his job at J-M in March 2007. The plant's phone number was unlisted but had been given to employees during Rivera's employment.

The next issue is that of the motion in limine. Before trial, the district court ruled that Detective Anderson could not say he had seen Rivera's mug shot because that might appear as though Rivera had a prior criminal record, which was not relevant to this trial.

Rivera contends that Anderson's statement improperly communicated to the jury that he had a prior criminal conviction. Rivera argues that Anderson's statement violated his right to a fair trial, and the district court erred in denying his motion for a new trial.

When a party alleges that an order in limine has been violated, the district court must determine (1) whether the order has been violated and, if so, (2) whether the party alleging the violation has established substantial prejudice resulting from that violation. *State*

*v. Crum*, 286 Kan. 145, 160, 184 P.3d 222 (2008). Because the district court is in the best position to determine whether a violation occurred and to determine the degree of prejudice any violation may have caused, the court's determination on these matters will not be disturbed absent a clear abuse of discretion. 286 Kan. at 160. When the district court grants a motion in limine, and the prohibited evidence is introduced at trial, the moving party must object at trial to the admission of the evidence to preserve the issue for appeal. *State v. Fewell*, 286 Kan. 370, 391, 184 P.3d 903 (2008).

A party must lodge a timely and specific objection to the admission or exclusion of evidence in order to preserve the evidentiary question for review. K.S.A. 60-404; *State v. King*, 288 Kan. 333, 348, 204 P.3d 585 (2009). "Specifically, the statute requires an on-the-record 'objection to the evidence timely interposed and so stated as to make clear the specific ground of objection.' " *State v. Houston*, 289 Kan. 252, 270, 213 P.3d 728 (2009). Here, Rivera did not lodge an objection; however, the court immediately admonished the jury to disregard Anderson's statement.

Even if the district court's immediate jury instruction excuses Rivera's duty to make a timely objection, his right to a fair trial was not violated by the violation of the limine order. He did not suffer substantial prejudice given the other evidence against him and the immediate instruction to the jury to ignore the statement. As the Kansas Supreme Court has said: "A defendant is entitled to a fair trial but not a perfect one." *State v. Mitchell*, 220 Kan. 700, 703, 556 P.2d 874 (1976). Although Anderson's remark was prejudicial, it had little, if any, likelihood of affecting the outcome of the trial.

Rivera also argues that his motion for a new trial should have been granted. "The court on motion of a defendant may grant a new trial to him if required in the interest of justice." K.S.A. 22-3501. An appellate court reviews the trial court's decision on a motion for new trial for an abuse of discretion. See *State v. Mathis*, 281 Kan. 99, 103-04, 130 P.3d 14 (2006). "Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Gant*, 288 Kan. at 81-82.

The appellate court dealt with a nearly identical issue in *State v. Barncord*, 240 Kan. 35, 726 P.2d 1322 (1986). In *Barncord*, a police officer mentioned, on cross-examination by the defense, that the defendant had served time in jail, despite an order that no reference would be made to the defendant's criminal record. The statement here is less incriminating than the statement in *Barncord*. Here, Anderson said, on cross-examination, that he had seen Rivera's mug shot. In *Barncord*, the police officer explicitly said the defendant had served time in jail. In *Barncord*, as here, the district court immediately instructed the jury to disregard the statement. Based on that instruction and the other evidence against the defendant, the *Barncord* court held that the error had little, if any, likelihood of affecting the trial's outcome. 240 Kan. at 44-45. Similar reasoning on similar facts was upheld in *State v. Rice*, 261 Kan. 567, 591-92, 932 P.2d 981 (1997). In Rivera's case, the trial court determined that, based on its immediate instruction to the jury to ignore the statement, any error based on Anderson's statement was harmless. Therefore, Rivera's motion for a new trial was properly denied.

Rivera also argues that the district court improperly allowed his phone records to be entered into evidence. Rivera objected to the admission of the records based on an inconsistency between the toll and the switch records. The court overruled his objection, stating that any discrepancy between the records went to the weight of the evidence and not its admissibility.

"The general standard of review for questions regarding foundation is as follows: A district court usually has considerable discretion in evidentiary rulings regarding foundation evidence, and its decisions in this regard are reviewed for an abuse of this discretion. *City of Overland Park v. Cunningham*, 253 Kan. 765, 772, 861 P.2d 1316 (1993). The question of the adequacy of an evidentiary foundation is a question of fact and is reviewed for substantial competent evidence supporting the district court's finding. 253 Kan. at 773." *State v. Davis*, 41 Kan. App. 2d 1034, 1037, 207 P.3d 281 (2009).

Substantial evidence is evidence possessing both relevance and substance and which provides a substantial basis of fact from which the issues can reasonably be determined. Specifically, substantial evidence refers to legal and relevant evidence that a reasonable

person could accept as being adequate to support a conclusion. *State v. Walker*, 283 Kan. 587, 594-95, 153 P.3d 1257 (2007).

Rivera argues that the phone records should not have been admitted because they were unfairly prejudicial and lacked foundation and they were unreliable. At trial, he argued they were unreliable and lacked foundation. A party may not object at trial to the admission of evidence on one ground and then on appeal argue a different ground. *State v. Engelhardt*, 280 Kan. 113, 127, 119 P.3d 1148 (2005). Therefore, Rivera's argument that the records were unfairly prejudicial has not been properly preserved for appeal.

Rivera's argument that the records were unreliable and lacked foundation, however, has been preserved. Even so, his objection was properly overruled. In this case, the phone records are relevant and of substance because they go directly to establishing a material fact in the case: whether the call came from Rivera's phone. Further, the district court did not abuse its discretion in admitting the records. The court's decision to admit the phone records was not arbitrary, fanciful, or unreasonable. It was made after testimony that the records accurately represented calls made to and from Rivera's cell phone, and the records were explained by an Alltel manager who had experience dealing with customer records. There was substantial competent evidence supporting the court's ruling to admit the records, and there was no abuse of discretion in admitting them.

Rivera further argues that admitting his Alltel phone records as evidence violated his right under the Sixth Amendment to the United States Constitution to confront the witnesses against him. However, Rivera made no objection to the introduction of the records on confrontation grounds. Evidentiary claims such as this one "must be preserved by way of a contemporaneous objection for those claims to be reviewed on appeal." *King*, 288 Kan. at 349. Also, constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Gant*, 288 Kan. 76, 82, 201 P.3d 673 (2009). This issue has not been properly preserved for appeal.

Affirmed.