(239 P.3d 110)
No. 103,072

STATE OF KANSAS, *Appellee*, v. JEANETTE TROSTLE, *Appellant*.

Opinion filed September 17, 2010.

*Jeanette Trostle*, pro se appellant.

*Nicholas J. Heiman*, assistant county attorney, *Marc Goodman*, district attorney, and *Steve Six*, attorney general, for the appellant.

Before HILL, P.J., PIERRON and LEBEN, JJ.

PIERRON, J.: Jeanette Trostle appeals from her conviction of an improper U-turn in violation of K.S.A. 8-1546(a).

On February 10, 2009, Trostle was driving a tractor-trailer from Texas to Clinton, Missouri. While in Kansas, she was traveling east on Highway 50 and attempted to get on Interstate 35. She was misled by the exit signs and ended up on Road G headed north. She wanted to turn around and head back south to Highway 50. She attempted to turn left, but to do so, she had to turn wide by first going to the right because of the size of the vehicle and the steep embankments on either side of the road onto which she was turning. The road did not have much of a shoulder. Trostle miscalculated the turn, and the back tire of the trailer went off the road and sunk into the soft ground.

Trostle's tractor-trailer was still facing north when it came to a stop. According to Trostle, she was not going to make a U-turn but was going to make a left-hand turn, with the ultimate goal of turning around to go back in the direction she came. A U-turn, which she equated with a semicircle turn, would not have been possible at that intersection with a 70-foot-long tractor-trailer.

Officer Corey Nicolet of the Lyon County Sheriff's Department was dispatched to Trostle's location at Road 190 and Road G in response to a report of a tractor-trailer that was blocking both roads. Nicolet arrived at approximately 2:10 a.m. The tractor was

blocking the eastbound lane of I90 and the trailer was in the ditch. Traffic was blocked, which was a hazard to oncoming motorists. Nicolet identified Trostle as the driver of the vehicle. Trostle told him she had been driving north, but had made a wrong turn and needed to turn around to drive south. She had swung wide to the right to try to make the corner, but the ground was too soft and the trailer sank in, causing it to become stuck. The tractor-trailer had not completed its turn and was still facing north when Nicolet arrived.

Nicolet stayed at the scene until Trostle's tractor-trailer was removed from the ditch. Another deputy was also at the scene. A tow truck came and got Trostle's tractor-trailer unstuck. The officers blocked traffic while the tow company employees directed Trostle in safely turning the vehicle around to go south. According to Nicolet, a U-turn is "when you're facing one direction and you make a maneuver in which to face the other direction." He did not view a U-turn as a semicircle turn in one turn.

Before he left the scene at approximately 3:45 a.m., Nicolet issued Trostle a citation for making an improper U-turn in violation of K.S.A. 8-1546.

Trostle pled not guilty to the infraction, waived counsel, and proceeded pro se at trial. After trial, the traffic court found her guilty of an improper U-turn under K.S.A. 8-1546(a). She was sentenced to a $60 fine, and $75 in court costs were imposed. Trostle appealed to the district court, which held a de novo bench trial and found Trostle guilty under K.S.A. 8-1546. The court found that Trostle had attempted to make a turn to go back in the other direction and in doing so she had impeded or interfered with other traffic. The court found that based on the language of the statute, it did not matter whether a U-turn was actually made. What mattered was that Trostle had attempted to turn the tractor-trailer with the ultimate goal of proceeding in the other direction, and she had interfered with other traffic by blocking the road for over an hour.

The district court sentenced Trostle to a $60 fine, and $86 in court costs were imposed. Trostle timely appealed to this court.

Trostle argues there was insufficient evidence to support the district court's guilty verdict. She contends the court misinter-

preted what was required to find her guilty under K.S.A. 8-1546. When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether after a review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Gant*, 288 Kan. 76, 83, 201 P.3d 673 (2009). Interpretation of a statute is a question of law over which this court has unlimited review. *State v. Jefferson*, 287 Kan. 28, 33, 194 P.3d 557 (2008).

First, Trostle argues she did not make a U-turn. She states the evidence was that she was going to turn left, back up, and then proceed in a southerly direction, which was not prohibited by K.S.A. 8-1546. The applicable portion of K.S.A. 8-1546 states: "(a) The driver of any vehicle shall not turn such vehicle so as to proceed in the opposite direction unless such movement can be made in safety and without interfering with other traffic."

When interpreting a statute, our first task is to ascertain the legislature's intent through the statutory language it employed, giving ordinary words their ordinary meaning. When a statute is plain and unambiguous, we will not speculate as to the legislative intent behind it and will not read the statute to add something not found in it. Criminal statutes must be strictly construed in favor of the accused, and any reasonable doubt as to the meaning of the statute must be decided in favor of the accused. Nevertheless, this rule of strict construction is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. *State v. Gracey*, 288 Kan. 252, 257-58, 200 P.3d 1275 (2009).

K.S.A. 8-1546 does not define the term "U-turn." It also does not make a U-turn illegal. Instead, it proscribes turning a vehicle "so as to proceed in the opposite direction" unless the move can be made safely and without impeding traffic. K.S.A. 8-1546(a). This effectively puts motorists on notice of what conduct is proscribed by the law. See *State v. Busse*, 252 Kan. 695, 699, 847 P.2d 1304 (1993).

The testimony at trial was that Trostle was heading north and was attempting to turn her vehicle in order to proceed south on

the same road. Her vehicle became stuck before she was able to complete the maneuver. Whether she was going to be able to complete the maneuver in one move or would be required to make several moves before proceeding in the opposite direction does not change the analysis in this case. The statute requires evidence that the defendant was turning a vehicle so as to proceed in the opposite direction. There was sufficient evidence to support a finding that Trostle was turning her vehicle so as to proceed in the opposite direction. In fact, that was what she said she was doing.

Trostle next argues there was no evidence that she caused a safety hazard or traffic interference as required by the statute. According to Trostle, there was no evidence of any traffic in either direction during the time period, which was 2:10 a.m. to 3:45 a.m. Trostle states that Nicolet did not testify there was a safety hazard or traffic interference. The record reveals otherwise. Nicolet testified that traffic was blocked by Trostle's vehicle, which was a hazard to oncoming motorists. Nicolet also testified that he and the other officer blocked traffic so the tow company employees could get the tractor-trailer turned around safely. Nicolet stayed on the scene until the roadway was clear for all traffic to go by. This was sufficient evidence upon which the district court could rely to find Trostle's movement was not made in safety and without interfering with other traffic. See K.S.A. 8-1546(a).

Viewing the evidence in the light most favorable to the State, a reasonable factfinder could have found Trostle guilty under K.S.A. 8-1546(a) beyond a reasonable doubt.

Affirmed.