No. 102,535

STATE OF KANSAS, *Appellee*, v. JOHN SAMPSON, *Appellant*.
(301 P.3d 276)

Opinion filed May 3, 2013.

*Michelle A. Davis,* of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Boyd K. Isherwood,* assistant district attorney, argued the cause, and *Nola Tedesco Foulston,* district attorney, and *Steve Six,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

MORITZ, J.: In this appeal of his convictions for first-degree felony murder, aggravated robbery, and aggravated burglary, John Sampson contends the trial court violated his right to a fair trial when it granted his motion to sequester witnesses but allowed a testifying law enforcement officer to remain in the courtroom and at the prosecution table throughout trial. Sampson also claims the trial court violated his right to present his theory of defense by refusing to allow defense counsel to introduce evidence of an accomplice's prior felony conviction.

We conclude the trial court abused the discretion recognized in our caselaw as it existed at the time of trial when it permitted a testifying law enforcement officer to sit at the prosecution's table during trial. Additionally, because of the likelihood of this practice enhancing the officer's credibility with the jury, we hold today that

a trial court may not permit a testifying law enforcement officer to sit at the prosecution's table during a jury trial. Further, while we recognize that a trial court retains discretion over decisions regarding the sequestration of witnesses, including whether to permit a testifying law enforcement officer to remain in the courtroom despite a sequestration order, we hold the trial court abused its discretion in permitting a testifying law enforcement officer to remain in the courtroom under the circumstances of this case. But because we conclude the officer's presence at counsel table and in the courtroom did not prejudice Sampson, we affirm his convictions.

Finally, we hold the trial court properly applied K.S.A. 60-421 and K.S.A. 60-422 in refusing to admit evidence of an accomplice's conviction. But we do not reach Sampson's claim that evidence of the accomplice's prior conviction was admissible under K.S.A. 60-446 or K.S.A. 60-447 because Sampson failed to preserve those arguments for review.

## FACTUAL AND PROCEDURAL BACKGROUND

On the evening of July 10, 2007, police officers responded to a residence in Wichita to check on the welfare of Stanley Bloom. The officers found Bloom dead on the floor of his bedroom, and it appeared his apartment had been ransacked. Bloom's autopsy revealed he died from a gunshot wound and several blunt force injuries to his head.

In 2008, the State charged Sampson with first-degree premeditated murder, an alternative count of first-degree felony murder, aggravated robbery, and aggravated burglary. The following facts were developed at Sampson's trial.

Sometime before 1:30 a.m. on July 10, 2007, Sampson, Sampson's son Corey Logan, and Sampson's girlfriend's son, Joey Smith, drove to Bloom's home. Sampson and Logan believed Bloom had large amounts of cash and marijuana in his home, and they planned to rob Bloom to pay off a debt Sampson owed to Jeremy Harris. Harris solicited Sampson to commit the robbery, insisted that Sampson take Smith along, and supplied Sampson with a .45 caliber gun.

According to Smith and Logan, Smith stayed in the truck while Logan and Sampson broke into Bloom's home. According to Logan, Sampson shot Bloom and beat him with a nightstick. Ultimately, the intruders left Bloom lying on his bedroom floor with a fatal gunshot wound and blunt force injuries to his head. According to Smith, Sampson returned to the truck with a .45 caliber pistol and Bloom's pellet gun, among other items, and told Smith he shot someone.

When the men returned to Sampson's home, Sampson instructed Logan to clean out the car, burn the clothing and shoes worn by the men during the robbery, and bury the .45 caliber handgun and nightstick in the backyard. After changing his clothes, Sampson returned to work and told Carol Smith, Sampson's girlfriend and coworker and Joey Smith's mother, that he had killed someone. According to Carol, Sampson "looked pretty stressed out," "[h]e was shaking," and "his face was white."

Detectives Thomas Fatkin and Blake Mumma interviewed Sampson twice in November 2007. During the first interview, Sampson identified Logan, Joey Smith, and Smith's brother, Kenny Smith, as the three men who robbed and killed Bloom. Sampson claimed Jeremy Harris solicited those three men to commit the crimes. Sampson admitted he disposed of a grill used by Logan to burn the men's clothing and told Logan to get rid of the gun used in the murder. During the second interview, Sampson admitted he drove Logan and Smith to commit the robbery at Jeremy Harris' request and that either Smith or Logan had a gun, but Sampson claimed he remained in his truck while Logan and Smith broke into Bloom's home and shot Bloom.

The jury found Sampson guilty of first-degree felony murder, aggravated burglary, and aggravated robbery. The court imposed a controlling prison sentence of life with no possibility of parole for 20 years plus 120 months. We have jurisdiction to hear Sampson's direct criminal appeal under K.S.A. 2012 Supp. 22-3601(b)(3) (maximum sentence of life imprisonment imposed) and K.S.A. 2012 Supp. 22-3601(b)(4) (conviction of off-grid crime).

## THE TRIAL COURT ABUSED ITS DISCRETION BOTH BY ALLOWING DETECTIVE FATKIN TO SIT AT THE PROSECUTION TABLE AND TO REMAIN IN THE COURTROOM DESPITE A SEQUESTRATION ORDER.

Sampson claims the trial court violated his right to a fair trial and to an impartial jury under the Sixth and Fourteenth Amendments to the United States Constitution and Section 10 of the Kansas Constitution Bill of Rights when it allowed Detective Fatkin to sit at the prosecution table throughout the trial. First, Sampson argues Fatkin's presence in the courtroom violated the sequestration order and prejudiced Sampson because Fatkin listened to other witnesses and tailored his testimony to explain inconsistencies in their testimony. Second, Sampson argues Fatkin's presence at the prosecution table prejudiced Sampson because it enhanced Fatkin's credibility with the jury.

The State contends the trial court did not abuse its discretion by allowing Fatkin to remain in the courtroom despite the sequestration order or by allowing him to sit at the prosecution table. The State further argues Sampson failed to raise any specific allegations of prejudice at the trial court level. Alternatively, the State contends that even if the trial court erred, Sampson was not prejudiced by that error and reversal is not required.

### Standard of Review

A trial court's decision whether to sequester witnesses is discretionary. *State v. Heath*, 264 Kan. 557, 588-89, 957 P.2d 449 (1998). Further, the trial court has discretion to permit certain witnesses to remain in the courtroom even if a sequestration order is in place. See *State v. Theus*, 207 Kan. 571, 577, 485 P.2d 1327 (1971). Finally, our prior caselaw suggests that the practice of allowing a testifying law enforcement officer to sit at the prosecution table, while discouraged, is subject to the trial court's discretion. *State v. Kirkpatrick*, 286 Kan. 329, 342-43, 184 P.3d 247 (2008). Accordingly, we review both of Sampson's claims for an abuse of discretion. A judicial action is an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

*Additional Facts Relevant to Our Discussion*

The trial court granted Sampson's pretrial motion to exclude witnesses from the courtroom during the examination of other witnesses. Not surprisingly, at trial, Sampson challenged Detective Fatkin's presence at the prosecution table, pointing out that the State anticipated that Fatkin would be testifying for the State. Citing the sequestration order, Sampson argued Fatkin should not be permitted to hear other witnesses' testimony. The prosecutor responded that given the large number of witnesses and the volume of evidence, Fatkin would assist the prosecutor in presenting the case. Sampson's counsel argued he already was outnumbered by the two prosecutors at the State's table and that in light of the sequestration order, it was unfair to allow Fatkin to remain in the courtroom. Sampson pointed out that if Fatkin were permitted to remain in the courtroom, he could "offer explanations" if witnesses offered testimony inconsistent with their statements to Fatkin.

In denying Sampson's objection and permitting Fatkin to remain at the prosecution table "at least for right now," the trial court acknowledged that this court has discouraged the practice of permitting testifying law enforcement witnesses to sit at counsel table. Nevertheless, the trial court reasoned that a case detective is generally more of a "fact gatherer" than a typical fact witness and likened a case detective's function to that of a legal assistant.

The jury heard testimony from several State witnesses before hearing from Fatkin for the first time. Fatkin testified regarding his role as lead case detective for the homicide investigation and described how the investigation unfolded from July 2007 to October 2007. With several remarks, Fatkin tied his own testimony to that of witnesses who previously had testified. For instance, Fatkin mentioned that Lieutenant Landwehr "spoke to you the other day" and "explained to you a little bit the other day" about how Fatkin became assigned the case. Fatkin further testified, "some of you have heard that evidence has been submitted by Detective Fatkin. You might have heard my name already."

During a recess after the next witness, Sampson's counsel renewed his objection to Fatkin's presence in the courtroom and at

the prosecution table. He pointed out that the State would soon call witnesses who Fatkin had interviewed and suggested Fatkin's presence in the courtroom would unfairly allow Fatkin to anticipate and prepare his rebuttal testimony. Finally, defense counsel reiterated that he was working alone and that the "extra help" Fatkin provided the State unfairly prejudiced the defense.

In denying Sampson's renewed objection, the trial court recognized that Fatkin had violated the "spirit of the sequestration rule," stating:

"Well, I have to candidly admit I had a little more concern when Detective Fatkin was on the stand than I did when we first argued the motion, because during his testimony he referred, well, you have already heard or you heard from Detective Landwehr. He is definitely tieing [*sic*] his testimony in to what other witnesses have said, because he has all that knowledge because he has been in the courtroom, as opposed to, I thought he might get up there and just more directly testify from his reports or notes or his investigative kind of historical perspective of what he did in the case, as opposed to, he is commenting on what is going on in the courtroom and what other witnesses have said, which I think, quite frankly, is, violates the spirit of the sequestration rule."

At this point, the prosecutor interrupted, suggesting that Fatkin referenced the testimony of other witnesses to avoid repeating their testimony. The trial court then clarified that Fatkin had not commented on the credibility of other witnesses. Nevertheless, the court expressed concern that by commenting on the testimony of other witnesses, Fatkin emphasized their testimony to the jury. The court stated: "Whether that is going to make it stick in their mind more because they have been reminded of it again or not, I don't know, but I'm becoming increasingly uncomfortable with my previous ruling."

The prosecutor then inquired of the court how Fatkin's presence would prejudice the defense. The court responded:

"Well, the prejudice can be that his very presence in the courtroom and being able to hear what these witnesses testify to, when you have already indicated you are going to recall him later, and both sides being the adversaries that you are and trying to present your case in the best possible light, you may have intended to call Detective Fatkin for the balance of his investigation, but you may say, oh, by the way, so-and-so testified this way and it could change your subsequent examination of the witness, because he will have knowledge of their in-court

testimony. Then he is in a position to comment on it or refer to a report and say they didn't testify that way or they did or didn't.

"You can call him, and even though sequestered, you can refer to a report and you can have him read the report and the jury may figure out it's inconsistent with the witness's testimony, but he doesn't have that advantage or that knowledge of hearing it himself in the courtroom.

"We all know the Constitution is designed to protect the individual rights, defendant's rights, the defendant's liberty interest that is at stake here, and we know a murder conviction is a life sentence. If we are going to err, we need to err on the side of indication for the defendant's Constitutional rights."

Citing *State v. Gant*, 288 Kan. 76, 201 P.3d 673 (2009), the prosecutor urged the court to exercise its discretion to allow the case detective to sit at the prosecution table. The court recognized "that has been the practice in Sedgwick County," but also noted this court's directive in *State v. Kirkpatrick*, 286 Kan. 329, 184 P.3d 247 (2008), that the "better practice" is to discourage law enforcement witnesses from sitting at the prosecution table. Despite the trial court's expressed concerns and its indication that it would err on the side of the defendant, the trial court ultimately overruled Sampson's renewed objection, thereby allowing Fatkin to sit at the prosecution table and remain in the courtroom, and the State subsequently called Fatkin as a witness on three more occasions before resting.

### Fatkin's Presence at Counsel Table

On appeal, Sampson asserts Fatkin's presence at the prosecution table allowed the detective to serve both as a witness and as a quasi-prosecutor, adding to Fatkin's credibility with the jury. Sampson urges us to issue a "definitive ruling outlawing the practice of allowing the case detective to serve as both a witness and a quasi-prosecutor."

As noted, our prior holdings on this issue have discouraged but permitted a testifying law enforcement officer to sit at the prosecution table absent an abuse of discretion. See *Gant*, 288 Kan. at 82; *Kirkpatrick*, 286 Kan. at 343.

In considering Sampson's request for a bright-line rule, we first pay heed to the well-accepted rule prohibiting prosecutors from commenting on the credibility of their own witnesses. See *State v.*

*Elnicki*, 279 Kan. 47, Syl. ¶ 6, 105 P.3d 1222 (2005) ("A prosecutor should not comment on the credibility of his or her own witnesses."); *State v. Pabst*, 268 Kan. 501, 506, 996 P.2d 321 (2000) (citing the Kansas Rules of Professional Conduct and the American Bar Association Standards of Criminal Justice and stating "[o]ur rules of conduct clearly and unequivocally say that it is improper for a lawyer to comment on a witness' credibility"). Sampson argues that when a testifying law enforcement officer is permitted to remain at the prosecution table, the State implicitly vouches for the credibility of that witness.

Based on this potential credibility boost, the defendant in *Kirkpatrick* argued the trial court abused its discretion in allowing the lead case detective to sit at the prosecution table over defendant's objection. Ultimately, the *Kirkpatrick* court held that "the better practice . . . is to discourage law enforcement witnesses from sitting at the prosecutor's table during a jury trial." 286 Kan. at 343. Nevertheless, the court declined to find an abuse of discretion, concluding practical reasons justified the court's action in permitting the detective to sit at counsel table in that case. 286 Kan. at 343-44.

But we acknowledged in *Kirkpatrick* that when a trial court permits a case detective to sit at the prosecutor's table "abuse is still a possibility" because the practice might enhance the detective's credibility. 286 Kan. at 343 (citing *Lollis v. Superior Sales Co.*, 224 Kan. 251, 264, 580 P.2d 423 [1978] ["There is always the danger that a jury will be overly impressed by the testimony of a police officer who gives the impression of being clothed with public authority."]).

This case exemplifies the danger we acknowledged in *Kirkpatrick*. Here, as the jury looked on, Fatkin sat at the prosecution table, acted as a legal assistant, rose four times from the table to testify, and returned four times to the table.

Despite the State's asserted practical reasons for allowing Fatkin to sit at counsel table, Fatkin's presence at the table under the circumstances of this case simply created too great an impression that he was "clothed with public authority," thereby improperly enhancing his credibility with the jury. Under these circumstances,

we conclude the trial court abused its discretion by allowing Fatkin to sit at the prosecution table throughout Sampson's trial.

Further, because of the likelihood of this practice enhancing a testifying law enforcement officer's credibility with the jury in any given case, we hold that from today forward, a trial court has no discretion to permit a testifying law enforcement officer to sit at the prosecution table, regardless of the practical benefits of that practice to the prosecution.

*Sequestration Order*

Our conclusion that a trial court.has no discretion to permit a testifying law enforcement officer to sit at the prosecution table does not end our analysis in this case. That is because a trial court retains discretion to lift a sequestration order and permit a testifying law enforcement officer to remain in the courtroom, albeit behind the bar. Sampson contends the trial court abused that discretion by permitting Fatkin to remain in the courtroom throughout the trial.

The primary purpose of sequestering witnesses is to prevent them from tailoring their testimony to that of earlier witnesses. *Heath*, 264 Kan. at 589. When, as here, a party seeks an exception from a sequestration order for a testifying law enforcement officer based on the need to utilize the officer as an assistant at trial, the trial court should consider a number of factors, including, but not limited to, the number of attorneys prosecuting the case, the complexity of the case, how often the State plans to call the officer to testify, and whether the State could present the same testimony through other witnesses. See, *e.g., United States v. Jackson*, 60 F.3d 128, 133, 135 (2d Cir. 1995) (interpreting Federal Rule of Evidence 615, which requires sequestration of witnesses at defendant's request, but permits an exception for "a person whose presence is shown by a party to be essential to the presentation of the party's cause" and setting forth various factors to be considered in deciding whether to allow exemption, including the significance of the testimony, the extent to which the testimony of the witness is likely to encompass the same issues as that of other witnesses, and whether the witness' presence is " 'essential' rather than simply

desirable"); *Knight v. State*, 746 So. 2d 423, 430 (Fla. 1998), *cert. denied* 528 U.S. 990 (1999) (citing Florida rule of evidence based on Rule 615 and affirming trial court's exemption to sequestration order for detective at death penalty sentencing hearing where detective testified as fact witness but essentially reported what other witnesses had testified to at trial, his testimony could be compared to trial transcripts, and there was no potential that he or other witnesses would alter their testimony based on his presence in the courtroom); *State v. Edwards*, 209 Kan. 696, 697-98, 498 P.2d 53 (1972) (noting that detective did not testify during State's case-in-chief); *State v. Fields*, 342 So. 2d 624, 628 (La. 1977) (affirming trial court's decision to allow deputy sheriff to sit at prosecution table and assist prosecutor, but noting that deputy did not actively participate in trial and was needed to confer with prosecutor concerning facts as evidence unfolded at trial).

Here, our review of the substance of Fatkin's testimony convinces us the trial court abused its discretion in permitting Fatkin to remain in the courtroom despite his violation of the spirit of the sequestration order.

Fatkin first testified after several witnesses had already taken the stand. He described how the investigation of this case unfolded from July 2007 through October 2007. During this portion of his testimony, Fatkin tied his testimony to the testimony of other witnesses, referring to some witnesses by name, and, in one instance, pointing out that the jury had already heard Fatkin's name mentioned by other witnesses.

Following Fatkin's initial testimony, Sampson renewed his objection to Fatkin's presence in the courtroom. The trial court candidly expressed concern regarding Fatkin's presence in the courtroom, recognizing that Fatkin had tied his testimony to that of other witnesses. Significantly, the trial court specifically noted that Fatkin's comments "violate[d] the spirit of the sequestration rule." Nevertheless, the trial court upheld its prior ruling allowing Fatkin to remain in the courtroom and Fatkin testified three more times. Significantly, before Fatkin testified for the third time, the jury heard testimony from Sampson's alleged accomplice, Joey Smith, regarding his version of the events surrounding the murder. The

jury then heard Fatkin testify about his second interview with Sampson wherein Sampson admitted his involvement in the robbery. Fatkin also testified that he interviewed Smith and that Smith denied involvement in the robbery and murder. The jury then heard testimony from Sampson's alleged accomplice, Corey Logan, regarding his version of the events surrounding the murder. Finally, the State called Fatkin as its last witness. During his final testimony, Fatkin testified about his interview with Logan, reiterating some of the information he obtained during the interview and essentially corroborating that Logan testified consistently with the statements he had given to Fatkin during his investigation.

Based on the substance of Fatkin's testimony, we have no hesitancy in concluding the trial court abused its discretion in allowing Fatkin to remain in the courtroom throughout the trial despite the sequestration order and, more importantly, despite the court's expressed acknowledgement that Fatkin was tying his testimony to that of other witnesses.

*Harmless Error Analysis*

Next, we must determine whether the trial court's errors prejudiced Sampson, *i.e.*, whether the errors were harmless. See *Ward*, 292 Kan. at 569-70; *Heath*, 264 Kan. at 590; *Theus*, 207 Kan. at 577. Sampson contends the trial court's error both in permitting Fatkin to remain in the courtroom and in permitting him to sit at the prosecution table implicated Sampson's constitutional rights.

The State does not dispute that this is a constitutional error. Instead, citing *Gant*, the State contends Sampson has the burden to establish prejudice and that he failed to meet that burden here as he makes no allegations of prejudice. See *Gant*, 288 Kan. at 82 ("In the absence of any specific allegations of prejudice, Gant does not raise an issue stating reversible error."); see also *Heath*, 264 Kan. at 589-90 (finding abuse of discretion but noting that "the defendant failed to demonstrate that [the witness'] presence at trial resulted in any tailoring of her testimony").

But we clarified in *Ward*, 292 Kan. at 567-69, that the party benefitting from a constitutional error—here, the State—bears the burden of demonstrating that the error is harmless. And under this

standard, in order to find an error harmless we "must be persuaded beyond a reasonable doubt that there was no impact on the trial's outcome, *i.e.*, there is no reasonable possibility that the error contributed to the verdict." 292 Kan. at 565.

Here, the trial court instructed the jury on aiding and abetting:

"A person who either before or during its commission intentionally aids or abets another to commit a crime, with intent to promote or assist in its commission, is criminally responsible for the crime committed, regardless of the extent of the defendant's participation, if any, in the actual commission of the crime."

Significantly, Sampson's own statements, which came in through Fatkin, admitted the elements of aiding and abetting a felony murder. Specifically, Sampson admitted during his second police interview that he drove his car to Bloom's house, he knew his accomplices planned to break in and rob Bloom, he knew at least one of his accomplices had a gun, and that Sampson told Logan to destroy evidence.

Further, both of Sampson's accomplices—Logan and Smith—testified that Sampson and Logan planned to rob Bloom, broke into Bloom's home, and took various items from the home. Logan testified that Sampson had a .45 caliber gun, shot Bloom during the robbery, beat him with a nightstick, and afterward, told Logan to destroy evidence. Smith testified Sampson admitted that he shot someone immediately after the robbery. Carol Smith, Sampson's girlfriend and coworker, testified Sampson returned to work on the night of the murder appearing "stressed out" and shaking, and told her he had shot someone.

Under these circumstances, we are persuaded beyond a reasonable doubt that the trial court's errors in allowing Fatkin to sit at the prosecution table and to remain in the courtroom despite the sequestration order did not impact the trial's outcome.

### THE DISTRICT COURT PROPERLY EXCLUDED EVIDENCE OF SMITH'S PRIOR FELONY CONVICTION.

Next, Sampson claims the trial court violated his fundamental right to present his theory of defense by limiting his cross-examination of alleged accomplice Joey Smith. Sampson argues that after Smith testified on direct examination that it was not like him to get

involved in robbing or killing someone, the trial court should have permitted Sampson to present evidence that Smith had a prior felony conviction of criminal discharge of a firearm at an occupied building. Sampson reasons that Smith's testimony opened the door to admission of the prior conviction. Further, Sampson contends the trial court's evidentiary ruling is contrary to K.S.A. 60-446 and K.S.A. 60-447, which govern the admissibility of character evidence.

But the State contends the trial court properly excluded Smith's prior conviction under K.S.A. 60-421 and K.S.A. 60-422, which govern the admissibility of evidence to challenge a witness' credibility. Additionally, the State urges us to reject Sampson's argument regarding the admissibility of the conviction under K.S.A. 60-446 and K.S.A. 60-447 because Sampson failed to make this argument in favor of exclusion of the evidence below.

Under our federal and state constitutions, a defendant is entitled to present his or her theory of defense, and the exclusion of evidence that is an integral part of that theory violates the defendant's fundamental right to a fair trial. But the defendant's right to present a defense remains subject to statutory rules and caselaw interpretation of the rules of evidence and procedure. *State v. Walters*, 284 Kan. 1, 8, 159 P.3d 174 (2007); *State v. White*, 279 Kan. 326, 331-32, 109 P.3d 1199 (2005).

Generally, the extent of cross-examination of a witness for impeachment purposes lies within the sound discretion of the trial court. *State v. Albright*, 273 Kan. 811, 820, 46 P.3d 1167, *cert. denied* 537 U.S. 962 (2002). But here, the trial court specifically excluded Smith's prior conviction under K.S.A. 60-421 and K.S.A. 60-422. Whether the trial court complied with specific statutory requirements for excluding the evidence requires interpretation of a statute, which we review de novo. Similarly, we review de novo whether the trial court's evidentiary ruling violated the defendant's constitutional rights. See *White*, 279 Kan. at 332.

On direct examination, Joey Smith testified that Sampson telephoned him on the evening of July 9 and asked him to come over. Smith ultimately rode with Sampson and Logan to Wichita and, en route, learned that Logan and Sampson planned to rob Bloom.

Smith testified he was "[p]retty much freaking out" while Sampson and Logan discussed kicking in Bloom's door and taking his money. Regarding this plan, Smith claimed: "I didn't want no part of that. It's not me."

During Smith's cross-examination, defense counsel questioned Smith as to what he meant when he said, "It's not me." The following colloquy then occurred:

"Q. When you say that is not the kind of person that you are, what do you mean by that?

"A. *To get involved in something like this. That is not me.*

"Q. *Something like what?*

"A. *Killing somebody.*

"Q. *Well, okay. You have been involved in other similar type things, haven't you?*

"A. *Yes.*

"[By prosecutor:] Objection, Your Honor.

"THE COURT: Counsel approach." (Emphasis added.)

Outside the jury's presence, the trial court read from K.S.A. 60-421 and cited an unspecified rule of evidence regarding the admission of evidence of specific instances of conduct to prove a character trait, presumably based on an immediately preceding off-the-record bench conference. It appears from the record that Sampson claimed Smith opened the door to the introduction of his prior conviction for discharging a firearm at an occupied building by claiming he was not the kind of person to get involved in robbery or murder.

Ultimately, the trial court refused to permit Sampson to introduce Smith's prior conviction, concluding that K.S.A. 60-421 limits the admissibility of prior convictions for impeachment purposes to convictions for crimes involving dishonesty or false statements. Further, the trial court reasoned that K.S.A. 60-422(d) bars the admission of specific instances of conduct relevant to prove a character trait.

*Analysis*

On appeal, Sampson argues Smith's prior conviction was admissible under K.S.A. 60-446 and K.S.A. 60-447 because Smith placed his character in issue by testifying that it was not like him to get

involved in robbing or killing someone. But as the State points out, Sampson failed to seek admission of Smith's prior conviction under K.S.A. 60-446 or K.S.A. 60-447; therefore, he failed to preserve this argument for review. See *State v. Richmond*, 289 Kan. 419, 428, 212 P.3d 165 (2009) (citing K.S.A. 60-404 as interpreted in *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 [2009], and refusing to consider admissibility of evidence under K.S.A. 60-447 when defendant failed to argue applicability of that particular statute at district court level).

Instead, we consider whether the trial court properly applied the rules of evidence considered below, K.S.A. 60-421 and K.S.A. 60-422. The admissibility of evidence for the purpose of impeaching a witness' credibility is governed by K.S.A. 60-420, which provides:

"*Subject to K.S.A. 60-421 and 60-422*, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling the witness may examine the witness and introduce extrinsic evidence concerning any conduct by him or her and any other matter relevant upon the issues of credibility." (Emphasis added.)

K.S.A. 60-421 limits the admissibility of prior convictions for impeachment purposes:

"*Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his or her credibility.* If the witness be the accused in a criminal proceeding, no evidence of his or her conviction of a crime shall be admissible for the sole purpose of impairing his or her credibility unless the witness has first introduced evidence admissible solely for the purpose of supporting his or her credibility." (Emphasis added.)

K.S.A. 60-422 further limits the admissibility of evidence for impeachment purposes and provides, in relevant part:

"As affecting the credibility of a witness . . . (c) evidence of traits of his or her character other than honesty or veracity or their opposites, shall be inadmissible; (d) evidence of specific instances of his or her conduct relevant only as tending to prove a trait of his or her character, shall be inadmissible."

Citing K.S.A. 60-421 and K.S.A. 60-422, Sampson argues Smith "opened the door" to the admission of his prior conviction by testifying on direct that he was not the type of person to get involved in robbing or killing someone. In support, Sampson cites *State v.*

*Johnson*, 258 Kan. 475, 481, 905 P.2d 94 (1995), where this court held that "when a *defendant* opens an otherwise inadmissible area of evidence during the examination of witnesses, the *prosecution* may then present evidence in that formerly forbidden sphere." (Emphasis added.) But Sampson's reliance on *Johnson* is misplaced as it provides no authority for the proposition that when a nondefendant witness opens the door to otherwise inadmissible evidence, the defense may then present evidence in "that formerly forbidden sphere."

Because Smith was not the defendant, the first sentence of K.S.A. 60-421 permitted admission of his prior conviction only if it was for a crime involving dishonesty or false statement. K.S.A. 60-421; *State v. Laughlin*, 216 Kan. 54, 55, 530 P.2d 1220 (1975). Sampson does not challenge the trial court's conclusion that Smith's conviction of criminal discharge of a firearm at an occupied building was not such a conviction. And unlike the second sentence of K.S.A. 60-421, which limits its application to testimony of the accused, the first sentence of K.S.A. 60-421 contains no exception admitting a nondefendant witness' prior conviction based on the introduction of evidence to support that witness' credibility. K.S.A. 60-421; see *State v. Harris*, 215 Kan. 961, 963, 529 P.2d 101 (1974) (expressing that K.S.A. 60-421 recognizes only one exception for the admission of a *defendant's* prior conviction, *i.e.*, when *the defendant* has previously introduced evidence admissible for the purpose of supporting his credibility). Under these circumstances, we conclude the trial court properly excluded Smith's conviction under K.S.A. 60-421.

The trial court also properly excluded Smith's conviction under K.S.A. 60-422. Under section (d) of that statute, evidence of a prior conviction to prove the character trait of engaging in criminal activity is inadmissible as a specific instance of conduct. See K.S.A. 60-422; *State v. Smallwood*, 223 Kan. 320, 326-27, 574 P.2d 1361 (1978) ("Thus, a witness' credibility may be attacked by showing the witness has character traits for dishonesty or lack of veracity, but those traits may only be proven by opinion testimony or evidence of reputation. Those traits may not be proven by specific instances of the witness' past conduct."). Accordingly, the trial

court properly excluded Smith's prior conviction under K.S.A. 60-422.

Affirmed.