NOT DESIGNATED FOR PUBLICATION

No. 113,434

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JACKY R. LASSETER,
*Appellant.*

MEMORANDUM OPINION

Appeal from Wyandotte District Court; J. DEXTER BURDETTE, judge. Opinion filed April 22, 2016. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Johnathan Grube*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., GREEN and LEBEN, JJ.

*Per Curiam*: Jacky Lasseter, the defendant in this criminal appeal, is the father of J.L. In 2012, at age 13, she told her counselor that Lasseter had touched her vagina several years before. When the case went to trial, Lasseter's attorney wanted to cross-examine J.L.'s mother about why J.L. was in counseling, but the district court found that the reasons for counseling were irrelevant and prohibited the attorney from asking about them. A jury convicted Lasseter of aggravated sexual liberties with a child under 14 years of age. On appeal, Lasseter contends that the limitation on cross-examination violated his right to present a defense based on the theory that J.L. had a reason to make up a story

about sexual abuse due to her parents' ongoing custody dispute. But Lasseter fails to establish that the district court abused its discretion in limiting cross-examination or that the ruling prevented him from presenting his defense. We therefore affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

J.L. is the daughter of Lasseter and Sherrie Wilson. Lasseter and Wilson were together from about 1997 to 2007 but had a very turbulent relationship, which involved domestic violence and substance-abuse issues. After Lasseter and Wilson split up, J.L. bounced back and forth between the two, living with Wilson from 2007 to mid-2008, then with Lasseter from mid-2008 to July 2011, and again with Wilson after that.

In 2012, when J.L. was 13, she revealed in counseling that she had been sexually abused. She claimed that the incident happened while she was visiting Lasseter for the weekend after Christmas in 2007 when she was 9 years old. At that time, her parents had recently split up, and Wilson had primary custody while Lasseter had visitation rights. According to J.L., she and Lasseter rode bikes to the liquor store, where Lasseter purchased vodka. He also bought her a treat so that she wouldn't tell her mother that he was drinking while she was there. They ate dinner and began watching a movie. J.L. alleged that while she was lying on the couch with her father watching the movie, he put his hand down her pants and touched her vagina. She said that she had told him she had to go to the bathroom and then had locked herself in the bathroom overnight. According to J.L., the next morning Lasseter had asked if he had done something to her the night before; she said she told him yes and started crying and that he apologized. J.L. testified that she hadn't told anyone about the incident until 2012 because she loved her father and was scared and also because no one had asked her about sexual abuse before that.

2

J.L.'s counselor and mother were both in the room when J.L. claimed that Lasseter had sexually abused her. They reported the allegations to law enforcement, which eventually charged Lasseter with one count of aggravated indecent liberties with a child under the age of 14. A specially trained child interviewer then spoke with J.L. about the allegations. J.L. told the interviewer that Lasseter had put his fingers into her vagina, but while testifying at trial, J.L. said that she could not remember whether Lasseter touched the inside or just the outside of her vagina.

Before trial, Lasseter's attorney asked for permission to get J.L.'s mental-health records and said that she wouldn't object if the district court reviewed the files privately first to determine what information was relevant and could be turned over to the defense. The attorney advised the court that the defense intended to explore J.L.'s motivation to fabricate allegations against Lasseter, including the history of domestic violence and drug use. After reviewing the documents, the district court found there was no evidence in the files that would be useful to Lasseter's defense and ruled that the documents would not be made public.

At trial, Wilson testified that J.L. had been in therapy "to help us all adjust to living together and—and everything." Lasseter's attorney sought to question Wilson on cross-examination about the circumstances surrounding J.L.'s therapy sessions. As it turned out, J.L. had been in counseling since 2007 to address parental drug use, domestic violence, and homelessness; she also was required to undergo counseling as part of her probation for a shoplifting conviction. The attorney theorized that the parents' drug use and domestic violence were important background for why J.L. may have made up sexual abuse allegations against Lasseter in an ongoing custody battle. The district court held that the defense attorney could ask whether Wilson and Lasseter had a "stormy relationship" but would not be allowed to address drug use or specific instances of domestic violence. The court also determined that the specific reasons J.L. was in therapy, such as the probation for her own theft conviction, were not relevant.

3

The jury ultimately convicted Lasseter of aggravated indecent liberties with a child. The district court sentenced him to life in prison without the possibility of parole for 25 years.

Lasseter appeals to this court.

ANALYSIS

*The District Court Did Not Violate Lasseter's Right to Present a Defense When It Limited Defense Counsel's Cross-Examination of a Witness.*

Lasseter argues that the district court violated his right to present a defense when it limited his attorney's cross-examination about why J.L. was in therapy. The State counters that the district court did not abuse its discretion when it limited cross-examination after finding the information was not relevant to the case.

The parties disagree on which standard of review should apply. Lasseter contends that whether the court violated his fundamental right to present a defense by limiting cross-examination is a question of law and, therefore, that this court should review the matter independently, with no required deference to the district court's judgment. The State argues that this court should review the district court's decision to limit cross-examination as it would review many evidentiary rulings—only for abuse of discretion; a district court abuses its discretion only when no reasonable person would agree with its view or its decision is based on an error of law or fact. See *State v. Parks*, 294 Kan. 785, 797, 280 P.3d 766 (2012).

A defendant has a fundamental right to present his or her theory of defense, and improperly excluding evidence that is integral to that theory may violate a defendant's

4

constitutional right to a fair trial. But the right to present a defense is limited by the statutory rules of evidence and the caselaw interpreting those rules. *State v. Tague*, 296 Kan. 993, 1000, 298 P.3d 273 (2013). So the district court violates a defendant's right to a fair trial only when it excludes relevant, admissible, and noncumulative (unique, not repetitive) evidence that is necessary to the defense theory. *State v. Roeder*, 300 Kan. 901, 927, 336 P.3d 831 (2014); *State v. Lawrence*, 281 Kan. 1081, 1084-85, 135 P.3d 1211 (2006).

The State is correct that, as a general rule, the trial court has discretion to set reasonable limits on the scope of cross-examination. *State v. Wells*, 296 Kan. 65, 86, 290 P.3d 590 (2012). The United States Supreme Court has said that trial courts have "wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about . . . harassment, prejudice, confusion of the issues, . . . or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). At the same time, a district court's decision to set limits cannot prevent all inquiry into an issue that is critically relevant to the defense's theory of the case. *Atkinson*, 276 Kan. at 928-29.

In *State v. McMillan*, 44 Kan. App. 2d 913, 242 P.3d 203 (2010), *rev. denied* 291 Kan. 916 (2011), we reviewed how an appellate court must reconcile these competing concerns:

> "A defendant has a right to present his or her theory of defense; excluding evidence that is an integral part of that theory violates the defendant's constitutional right to a fair trial. *State v. White*, 279 Kan. 326, 331, 109 P.3d 1199 (2005). Although the district court's evidentiary rulings are typically reviewed by this court for abuse of discretion, the question of whether the exclusion violated a defendant's constitutional rights is subject to unlimited review because the district court necessarily abuses its discretion when it makes an error of law and the exclusion impacts McMillan's constitutional rights. See 279 Kan. at 332. If it were error to exclude the evidence, then

5

reversal would be required unless the error was harmless, meaning that this court is willing to declare beyond a reasonable doubt that the error had little, if any, likelihood of changing the trial's outcome. *State v. Martinez*, 288 Kan. 443, 450, 204 P.3d 601 (2009)." 44 Kan. App. 2d at 928.

In other words, where the district court has the discretion to admit relevant, admissible, and noncumulative evidence that truly is necessary to the defense theory, it must do so—though if it wrongly excludes the evidence, an appellate court still may find the error harmless under the constitutional harmless-error rule. But the evidence must first be admissible. *Roeder*, 300 Kan. at 927; *Tague*, 296 Kan. at 1006.

To determine whether the evidence was admissible at all, we must first ask whether the evidence was relevant. As a general rule, all relevant evidence is admissible unless it is otherwise excluded by another evidentiary rule, constitutional provision, or court decision. *State v. Williams*, 303 Kan. ___, 363 P.3d 1101, 1108 (2016); *State v. Baker*, 287 Kan. 345, 363, 197 P.3d 421 (2008). Relevant evidence is evidence that tends to prove a significant fact—in legal terms, it must be both material and probative. K.S.A. 60-401(b); *State v. Huddleston*, 298 Kan. 941, 959, 318 P.3d 140 (2014). Evidence is material when it establishes a fact that is at issue or in dispute and is probative when it logically tends to prove the material fact. *State v. Coones*, 301 Kan. 64, 78, 339 P.3d 375 (2014).

During the trial, Lasseter's attorney, Kiann McBratney, sought to cross-examine Wilson about past substance-abuse issues. The State objected to the line of questioning, arguing that Wilson's and Lasseter's substance abuse was irrelevant to whether Lasseter committed the charged crime. McBratney argued that she should be allowed to cross-examine Wilson about the history of drug use and domestic violence in the family because it was part of the reason J.L. was in therapy. She contended that Wilson's statement during direct examination that J.L. was in therapy to help them "adjust to living

6

together" was false and that she should be allowed to cast doubt on Wilson's credibility by exploring the true reasons J.L. was in therapy—the history of parental drug use and domestic violence and J.L.'s probation requirements. She also asserted that the history of drug use and domestic violence "sets the background as to why there's a motivation . . . to make this kind of allegation because at the time the allegation was made . . . there was a custody issue going on."

In limiting cross-examination, the district court found that the reasons J.L. was in therapy and the parents' past issues with drugs and domestic violence were not relevant:

> "[W]hat I have to balance is the privacy issues of the people involved in this with [the defense attorney's] ability to attack the credibility. And I would agree I'm gonna give you some leeway, but you may not—the fact that [J.L.] was in therapy for probation is irrelevant in this Court's opinion. . . . I'm not gonna allow you to talk about why she was in therapy. The fact is she was in therapy. The why does not appear to be relevant to the Court. You may inquire of [Wilson] whether or not she and [Lasseter] had a stormy relationship, they didn't agree, they may have argued on occasion, et cetera. But the specifics, any drug use or him getting shot [by police responding to a domestic-violence report], et cetera, I won't allow you to get into that."

In cross-examining Wilson, McBratney asked whether she and Lasseter had a "stormy type of relationship" and whether J.L. would have been present during some of those "stormy times." Wilson said yes. McBratney asked about J.L.'s living situation— moving back and forth between Wilson and Lasseter. When asked whether J.L. "had expressed displeasure at living with her father," Wilson said, "Sort of, yeah." McBratney questioned Wilson about how sexual abuse came up in the counseling session. The district judge stopped McBratney when she began asking about other issues J.L. had discussed in counseling, such as cutting herself. McBratney then asked Wilson whether she and Lassester had had an ongoing case regarding custody issues around the time that J.L. had told her counselor about the alleged sexual abuse. Wilson said they hadn't and

7

denied seeking an increase in child support or a change of custody because there were no child-support or custody orders. The attorney made no efforts to refute Wilson's answers and merely moved on to another line of questioning.

On appeal, Lasseter claims that the district court's limitation on cross-examination violated his right to present a defense. Lasseter argues that he wanted to show that J.L. had a reason to fabricate the allegations: to prevent him from gaining custody in the ongoing custody dispute between him and Wilson. Whether J.L. had motive to falsely accuse Lasseter is a relevant question and is significant to Lasseter's defense that he didn't sexually abuse her. See *Holman*, 295 Kan. at 130-34 (discussing that complaining witnesses' motive to fabricate allegations was relevant issue in case). And it's conceivable that a custody dispute might motivate a party to make false accusations of sexual abuse, so that too would be relevant. See, *e.g.*, *In re Marriage of Stockham*, 23 Kan. App. 2d 197, 198-200, 928 P.2d 104 (1996) (upholding sanctioning of ex-wife who made false allegations of child sexual abuse in custody proceeding), *rev. denied* 261 Kan. 1085 (1997); see also Smit, Antokolskaia & Bijleveld, *Between Scylla and Charybdis: A Literature Review of Sexual Abuse Allegations in Divorce Proceedings*, 6 Psychology 1373, 1380 (2015) (available at http:/dx.doi.org/10.4236/psych.2015.611134) (concluding that one in seven to eight allegations of sexual abuse made during divorce proceedings is unfounded). What's less evident is how J.L.'s specific reasons for being in therapy would be relevant.

Lasseter first argues that Wilson's statement about why J.L. was in therapy was false and "opened the door" for his attorney to explore all the circumstances of J.L.'s therapy to impeach Wilson, or undermine her credibility. Generally, the district court can use its discretion to set the boundaries for cross-examination of a witness for impeachment purposes. *State v. Sampson*, 297 Kan. 288, 301, 301 P.3d 276 (2013). Lasseter provides no argument as to how the district court abused its discretion in doing so. A reasonable person could accept the district court's view that the mother's

8

mischaracterization or misleading statement should not open up all inquiries into her daughter's mental-health issues. We should note that Lasseter does not argue that the district court's decision violated his right to thoroughly cross-examine witnesses under the Confrontation Clause of the Sixth Amendment of the United States Constitution.

Lasseter does not tell us how the parents' history of drug use and domestic violence was relevant, other than as a subordinate issue in the custody dispute. As it was, the jury heard that Wilson and Lasseter had a volatile and "stormy" relationship, that J.L. had witnessed those "stormy times," and that J.L. had moved back and forth between her parents. Given the tenuous relationship between the specific evidence about the parents' drug use and domestic violence and the issues in the case, the district court did not exclude noncumulative, relevant evidence when it limited Lasseter's attorney in her cross-examination of Wilson on these subjects.

Lasseter also makes no specific argument on appeal that the fact that J.L. was in therapy as a condition of her probation was relevant to the case. In his brief, he notes only that the judge found it was irrelevant. A point raised only incidentally but not briefed is deemed waived or abandoned on appeal. *State v. Waller*, 299 Kan. 707, Syl. ¶ 5, 328 P.3d 1111 (2014).

Lasseter also doesn't explain how the district court's ruling kept his attorney from asking Wilson about the custody dispute. The court's ruling only prohibited questions about why J.L. was in therapy and her parents' history of drug use and domestic violence. The district court did not interrupt or stop McBratney when she began questioning Wilson about a custody dispute, and McBratney made no attempt to contest Wilson's denial of the dispute with evidence that there was an ongoing legal battle and that Wilson had been untruthful. See K.S.A. 60-420 (allowing party to present evidence relevant to credibility of witness). The defense's failure to establish a custody dispute was not due to the limit on cross-examination. See *Holman*, 295 Kan. at 135-36 (noting defense

9

counsel's failure to establish theory of defense because counsel didn't make basic inquiries of complaining witnesses within the scope set by the district court).

Furthermore, the record shows that Lasseter's attorney was able to explore J.L.'s motivation to fabricate allegations in spite of the limits on cross-examination. McBratney asked J.L. if she was seeing a counselor because of her parents' "stormy relationship"; J.L. responded, "That and other stuff." McBratney went on to ask J.L. about her relationship with and feelings toward her father when she made the allegations:

> "[McBratney:] Now, you stated on direct examination that you loved your dad, right?
>
> "[J.L.:] Yes.
>
> "[McBratney:] But you've also told your counselor that you're angry with him because he used to call you a lesbian, is that right?
>
> "[J.L.:] Yes.
>
> "[McBratney:] And you also told the counselor that you are angry with him because of issues between your mom and him, is that right?
>
> "[J.L.:] Yes.
>
> "[McBratney:] And those issues were going on when you finally said something to somebody, is that right?
>
> "[J.L.:] Yes.
>
> "[McBratney:] Okay. And you like living with your mom and her boyfriend, is that right?
>
> "[J.L.:] Yes.
>
> "[McBratney:] Now, at the time that these allegations came out . . . you were still visiting with your dad just prior to that, is that true?
>
> "[J.L.:] Yes.
>
> "[McBratney:] He was still drinking sometimes, is that right?
>
> "[J.L.:] Yes.
>
> "[McBratney:] And that's something you don't like to see him do, true?
>
> "[J.L.:] Yes.
>
> "[McBratney:] Because of what you remember between your mom and him, is that right?

10

"[J.L.:] Yes.

. . . .

"[McBratney:] And since the time that you have made this allegation against him, you haven't had to see him at all, have you?

"[J.L.:] No, except for at the prelim[inary hearing].

. . . .

"[McBratney:] Okay. Has that made you feel better?

"[J.L.:] I guess."

The defense's closing arguments emphasized that J.L. was upset with Lasseter at the time she told her counselor about the sexual abuse. McBratney stressed the amount of time that had passed from the alleged abuse to the disclosure, how J.L.'s story had changed about whether Lasseter had put his fingers into her vagina, and J.L.'s inability to remember what she had told police the year before. She argued that J.L.'s story had changed because J.L. had made up the allegations and offered up a laundry list of reasons why:

"Because she liked living with her mom and [her mom's boyfriend]. . . . Because she's still mad at [Lasseter] because he was drinking . . . . Because she's mad at her dad . . . [for] call[ing] her a lesbian. . . . Because she prefers not seeing him and she hasn't had to since she came up with this allegation."

With this review of the arguments and evidence in mind, we return to the overall question before us: Was the defendant prevented from presenting his theory of defense? The answer is no. The jury heard evidence about the defense's theory for J.L.'s motivations to make false allegations. Lasseter has failed to establish that the district court abused its discretion in limiting cross-examination by excluding noncumulative, relevant evidence. The district court's ruling excluded only irrelevant evidence, and Lasseter was still able to present evidence of his defense.

At oral argument, Lasseter's attorney also suggested that J.L.'s theft conviction would have been admissible to impeach J.L.'s credibility. While J.L.'s conviction for theft might have been admissible on that basis, see *State v. Mahkuk*, 220 Kan. 74, 78, 551 P.2d 869 (1976), it was never proffered for that purpose at trial. Neither did Lasseter's appellate brief explicitly raise the issue or argue why the issue could be taken up for the first time on appeal. In these circumstances, we will not consider this potential basis for admitting the theft conviction. See Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41); *State v. Godfrey*, 301 Kan. 1041, 350 P.3d 1068 (2015) (holding that failure to affirmatively invoke and argue in brief why issue may be raised for first time on appeal amounts to abandonment of the claim).

We affirm the district court's judgment.