NOT DESIGNATED FOR PUBLICATION

No. 120,449

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL DAVID SIMS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Saline District Court; JARED B. JOHNSON, judge. Opinion filed April 2, 2021. Affirmed in part, reversed in part, sentence vacated, and case remanded with directions.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Alexander C. Driskell*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BRUNS, P.J., BUSER, J., and WALKER, S.J.


PER CURIAM: A jury convicted Michael David Sims of criminal restraint, battery, assault of a law enforcement officer, felony interference with law enforcement, and criminal damage to property. On appeal, Sims contends that the State presented insufficient evidence to support his conviction for felony interference with a law enforcement officer, and the State concedes this issue. However, we find that there is sufficient evidence in the record to support a conviction for the lesser included offense of misdemeanor interference with a law enforcement officer. In addition, Sims contends that the district court erred in admitting evidence of a prior conviction of a crime of

1

dishonesty. However, we find this alleged error to be harmless. Finally, we do not find it to be prosecutorial error for the State to tell potential jurors during voir that they have a duty to follow the law. Thus, we affirm in part, reverse in part, vacate Sims' sentence, and remand this case for resentencing.

FACTS

On the night of April 6, 2016, Sims got into an argument with his wife at their home while their three children were sleeping. The argument escalated into a physical confrontation. The underlying details of the confrontation are largely immaterial to the issues presented in this appeal. As such, we will simply discuss the facts necessary to rule on these limited issues.

At some point, Sims' wife was able to leave the house and call 911. In response, Officer Breanna Kuhlman went to the scene to talk to Sims' wife. While she was doing so, Sims drove up but refused to comply with Officer Kuhlman's request that he get out of the truck. Instead, he locked the door and spoke to the officer through a slightly rolled down window.

Ultimately, at least three other officers responded to the scene. According to Officer Carlos Londono, he responded after hearing Officer Kuhlman requesting back up in a very distressed manner. Sims continued to refuse to exit the truck, and a physical struggle ensued. Officer Londono was dragged by the truck until he was able to get his foot onto the brake. After Sims was physically removed from the truck, Officer Katelyn Conn came over to assist the other officers in handcuffing him. While they were doing so, Sims was kicking and flailing his arms. In the process, he scratched Officer Conn's arm.

On April 8, 2016, the State charged Sims with multiple crimes arising out of the incident. Initially, the State charged Sims with aggravated kidnapping, aggravated battery, criminal threat, aggravated assault on a law enforcement officer, felony interference with law enforcement, three counts of battery on a law enforcement officer, and criminal damage to property. However, the State dropped one of the charges of battery on a law enforcement officer prior to trial.

The district court commenced a three-day jury trial on August 29, 2018. At trial, the State presented the testimony of several witnesses including Sims' wife, a neighbor to whom she had went for assistance, and several of the police officers who helped take Sims into custody. The State also presented several exhibits that were admitted into evidence, including a recording of a 911 call made by Sims' wife on the night of the incident as well as photographs showing the injuries she suffered. The exhibits admitted into evidence also included the officer's body camera footage from the night of the incident, a photograph of the injury to Officer Conn's arm, photographs of Sims' hands, and a recording of Sims' interview with the police. In his defense, Sims testified on his own behalf, called his mother as a witness, and presented several other exhibits.

After deliberation, the jury convicted Sims of criminal restraint, battery, assault of a law enforcement officer, felony interference with law enforcement, and criminal damage to property. However, it acquitted him of criminal threat and two counts of battery against a law enforcement officer. Subsequently, the district court sentenced Sims to a controlling prison sentence of 27 months.

Thereafter, Sims timely appealed.

ANALYSIS

*Interference with a Law Enforcement Officer*

On appeal, Sims contends that the State presented insufficient evidence to support his conviction for felony interference with a law enforcement officer. In particular, Sims argues that we should remand this matter to the district court for resentencing treating the conviction for interference with a law enforcement officer as a misdemeanor. In its brief, the State candidly concedes this issue and also requests that we remand this matter for resentencing. Accordingly, we reverse the felony conviction, vacate Sims' sentence, and remand this matter for resentencing consistent with a conviction for the lesser included offense of misdemeanor interference with a law enforcement officer.

*Admission of Evidence of Prior Conviction*

Next, Sims contends that the district court erred in admitting evidence that he had previously been convicted of a crime of dishonesty. The district court found that Sims had "opened the door" to the admission of this evidence by introducing evidence of good character during his direct examination. In particular, the district court pointed to Sims' testimony regarding being "the curator and director for United Recovery," "a certified peer mentor and recovery coach," and "a certified active listener for a self-help Website . . . ." In their briefs, the parties vigorously dispute whether this testimony was simply offered to provide "background" information or was offered to bolster Sims' credibility.

Even if we assume that the admission of the evidence regarding Sims' prior crime of dishonesty was erroneous, we find that the alleged error was harmless. In Kansas, "[a]ll relevant evidence is admissible unless statutorily prohibited." *State v. Boleyn*, 297 Kan. 610, 622, 303 P.3d 680 (2013). "Whether the trial court complied with specific statutory requirements for excluding the evidence requires interpretation of a statute, which we review de novo." *State v. Sampson*, 297 Kan. 288, 301, 301 P.3d 276 (2013). If

4

we find that the district court violated statutory evidentiary limitations, we must then apply "the harmless error standards set out in K.S.A. 2016 Supp. 60-261 . . . [and] consider 'whether a reasonable probability exists that the error affected the outcome of the trial in light of the record as a whole.'" *State v. Sean*, 306 Kan. 963, 986, 399 P.3d 168 (2017).

Here, we find that it is appropriate to turn directly to the issue of harmless error. See *Sean*, 306 Kan. at 986 ("We decline to address the admission of each statement in turn as it will have no effect on our ultimate conclusion. Even if we assume all of the testimony was erroneously admitted, our analysis below demonstrates its admission amounted to harmless error."). In doing so, it is important to recognize that the challenged evidence consists of the fact that Sims was previously convicted of theft in Saline County and that the prosecutor elicited the information during cross-examination through two questions. The prior conviction was never mentioned again during the trial.

Although the admission of evidence regarding a prior conviction for a crime of dishonesty can undercut a party's credibility, a review of the record reveals that defense counsel spent a considerable amount of time at trial attempting to undermine the credibility of Sims' wife. In particular, the defense introduced evidence that Sims' wife had been previously convicted of five crimes of dishonesty. In fact, this was the final evidence the jury heard before Sims rested his case. Moreover, unlike the State that did not mention Sims' prior crime during closing argument, the defense attorney emphasized his wife's prior convictions during closing argument. As such, we find that to the extent that Sims' credibility suffered in the eyes of the jury from the introduction into evidence of his prior theft conviction, his wife's credibility suffered at least the same—if not substantially more—damage at trial.

Furthermore, a review of the record reveals that the evidence supporting Sims' convictions—with the exception of the conviction for felony interference with a law

enforcement officer—was strong. As indicated above, this evidence included not only the testimony of Sims' wife but also the testimony of the neighbor to whom she ran to for help. The evidence also included testimony from the police officers who responded to the scene on the night of the incident as well as footage from their body cameras. In addition, the evidence included photos of the injuries suffered by Sims' wife as well as injuries to Sims' hands. Thus, based on our review of the record as a whole, we find that the alleged error was harmless because there is not a reasonable probability that the introduction of this evidence affected the outcome of the trial.

*Alleged Prosecutorial Error*

Finally, Sims contends the State committed prosecutorial error during voir dire when the prosecutor stated to the potential jurors that those who were selected to serve would take an oath to follow the law as given to them by the district court. Specifically, the prosecutor said, "In this case the instructions you get are not rules that you can change. Those are rules that you will take an oath to follow, and that you will take an oath to abide by. . . . So all of you, will you agree to follow the rules, to follow the instructions as given to you by the Court?" We do not find the prosecutor's statement or questions to be erroneous.

We apply a two-step analysis to claims of prosecutorial error. First, we must determine if an error occurred. Second, if an error occurred, we must determine whether the error resulted in prejudice. *State v. Patterson*, 311 Kan. 59, 70, 455 P.3d 792, *cert. denied* 141 S. Ct. 292 (2020). In determining error, we are to consider whether the "'prosecutor's actions or statements "fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial."'" 311 Kan. at 70.

Here, we do not find that the prosecutor committed error—much less prejudicial error—in telling the jury it should follow the law. The Kansas Supreme Court addressed a similar argument in *Patterson* and found that a prosecutor's statement during voir dire that jurors have an "obligation to follow the law" is not a misstatement of the law. In fact, as our Supreme Court recognized, telling jurors that they are obligated to follow the law "is an accurate—and bedrock—statement of law that mirrors the juror's oath; upholds the role of judge and jury; and most importantly, protects the accused." *State v. Boothby*, 310 Kan. 619, 631, 448 P.3d 416 (2019). Consequently, we conclude that the prosecutor did not commit error during voir dire.

Affirmed in part, reversed in part, sentenced vacated, and case remanded with directions.