NOT DESIGNATED FOR PUBLICATION

No. 115,432

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GARY SCOTT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JAMES R. FLEETWOOD, judge. Opinion filed May 19, 2017. Reversed and remanded.

*Carl F.A. Maughan*, of Maughan Law Group LC, of Wichita, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., ATCHESON, J., and FAIRCHILD, S.J.

POWELL, J.: Gary Scott appeals the district court's revocation of his probation, arguing his due process rights were violated when he was found in violation of the terms and conditions of his probation based upon grounds not pled in the probation violation warrant. While the evidence shows that Scott, an addict and drug offender, likely violated the terms of his probation by misusing his prescription medication, the probation violation warrant did not accuse him of this, meaning the district court violated Scott's due process rights by revoking his probation on this basis. Accordingly, we reverse the district court and remand for further proceedings.

1

FACTUAL AND PROCEDURAL BACKGROUND

After a bench trial, Scott was convicted of two counts of possession of cocaine, possession of an unlawful substance with no tax stamp affixed, and failure to use a turn signal. On January 24, 2013, the district court granted Scott's motion for a downward dispositional departure and placed him on 24 months' supervised probation with an underlying sentence of 30 months' imprisonment.

On June 19, 2013, Scott's probation was revoked and reinstated after he admitted to committing two new crimes and driving a wanted felon in his vehicle. On February 5, 2015, his probation was again revoked and reinstated, plus his probation term was extended for 24 months after he admitted to failing to obey the law, failing to report contact with law enforcement, and failing to refrain from alcohol use. He was also ordered to enter and complete the residential community corrections program. On June 16, 2015, Scott again admitted to violating his probation by being out of place of assignment and being under the influence of an unknown substance. For a third time, the district court revoked, reinstated, and extended his probation, ordering him to serve a 120-day prison sanction and then return to complete the residential program.

On September 11, 2015, a warrant was issued alleging Scott had violated his probation by appearing to be under the influence of an unknown substance. The district court held an evidentiary hearing. Aaron Crouse, a corrections worker at the Sedgwick County adult residential facility, testified he checked Scott into the facility on the afternoon of September 9, 2015, when Scott returned from a pass. Crouse stated Scott was unable to maintain a conversation and had difficulty answering typical questions. Scott was rambling, his speech was slurred, he was swaying back and forth, and his eyes appeared droopy and lethargic. Crouse believed Scott was under the influence of an intoxicating substance but did not know what it was because Scott had been out of the facility on a pass.

Stephanie Schroeder, a shift supervisor at the residential facility, testified she was responsible for dispensing medication to residents of the facility. She would call for medication, and the clients were responsible for collecting and taking their medication. She indicated Scott was prescribed Zoloft and Remeron while at the facility and was supposed to take one pill of each daily. Scott began taking Zoloft on August 30, 2015; however, his medication chart showed he did not take it on September 1, 3, 4, 5, or 6. Scott began taking Remeron on August 24, 2015, but he did not take it from August 29 through September 4, nor had he taken it since September 6. A disciplinary complaint was previously made after Scott was found keeping his prescribed medication in a locker at the facility.

Schroeder observed Scott after he returned to the facility and believed he was showing signs of impairment. She stated he was given a urinalysis (UA) test, which tested negative for synthetic marijuana (K-2). Schroeder said the negative UA only indicated Scott had not taken the particular strain of K-2 tested for. She stated it was possible he could have consumed some form of K-2 for which the facility did not test.

Greg Friedman, the residential facility coordinator, also testified he observed Scott on September 9, 2015, and like Crouse and Schroeder, believed Scott was intoxicated or under the influence of some type of substance. Friedman stated there had been a previous incident on May 22, 2015, when Scott appeared to be impaired and behaved in a similar manner. After Scott served a sanction for the May incident, he told Friedman he had used K-2 in the past. Friedman also testified the facility stopped testing for K-2 because the chemical formula continued to change, rendering the tests useless. Friedman discussed prior incidents where residents had been seen using K-2 on camera but test results came back negative. Friedman indicated he was not surprised Scott's UA came back negative and testified the facility's best method for detecting K-2 usage was observation of the residents.

Scott testified he was taking Zoloft and Latuda as mood stabilizers and Remeron for sleep problems. He denied behaving as Crouse, Schroeder, and Friedman described. Scott testified he was functional and remembered checking in, being patted down, initially refusing to sign the disciplinary report, and later signing it. Scott further claimed he had taken his prescribed medications as directed that morning and that he had medications at his home in addition to those at the facility. On cross-examination, Scott admitted there were times he would not take his medication when it was given to him, and he would put the medication in his cheek, swallow water, pretend he swallowed his pill, and then take the pill out of his mouth after leaving the room. He then stockpiled his medication to double up the dosage at a later time.

At the conclusion of the evidentiary hearing, the district court found Scott violated his probation, stating:

> "After considering the evidence that has been presented to me, in reviewing the testimony and determining the credibility of the evidence and testimony provided to me at this time, I am going to find that the State has in fact met its burden of proof in showing that [Scott] has in fact violated terms of his probation on the incident of September 9, which shows that he returned clearly under the—showing symptoms that he was clearly under the influence of either an unknown substance or as I have determined the result of knowingly misusing his prescribed medications.

> "His own testimony referring to cheeking medications, using medications, later doubling his medications at times, having medications or drugs located at three other different locations outside of the residential facility, made me convinced it's not his intent to comply with the terms of his probation . . . . So I will find that he has in fact violated his probation."

The district court revoked Scott's probation and imposed a modified prison sentence of 28 months.

4

Scott timely appeals.

## DID THE DISTRICT COURT ERR IN REVOKING SCOTT'S PROBATION?

Before addressing Scott's arguments, we recite the general rules regarding probation revocations:

> "A district court has no 'discretion in a probation revocation proceeding until the evidence establishes a probation condition violation.' *State v. Garcia*, 31 Kan. App. 2d 338, 341, 64 P.3d 465 (2003). The State has the burden of establishing probation violations. K.S.A. 2015 Supp. 22-3716(b)(2). 'To sustain an order revoking probation on the ground that a probationer has committed a violation of the conditions of probation, commission of the violation must be established by a preponderance of the evidence.' [*State v.*] *Gumfory*, 281 Kan. [1168,] 1170[, 135 P.3d 1191 (2006)]. 'A preponderance of the evidence is established when the evidence demonstrates a fact is more probably true than not true.' *State v. Inkelaar*, 38 Kan. App. 2d 312, 315, 164 P.3d 844 (2007), *rev. denied* 286 Kan. 1183 (2008)." *State v. Lloyd*, 52 Kan. App. 2d 780, 782, 375 P.3d 1013 (2016).

Once there has been evidence of a violation of the terms of probation, the decision to revoke probation rests in the discretion of the trial court. *State v. Hurley*, 303 Kan. 575, 580, 363 P.3d 1095 (2016). An abuse of discretion occurs when a judicial action is (1) arbitrary, fanciful, or unreasonable, *i.e.*, no reasonable person would take the view adopted by the trial court; (2) based on an error of law; or (3) based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). "If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *State v. Gant*, 288 Kan. 76, 82, 201 P.3d 673 (2009), *abrogated on other grounds by State v. Sampson*, 297 Kan. 288, 301 P.3d 276 (2013).

Here, Scott's principal argument is that the district court erred in revoking his probation on grounds not alleged by the State. Scott argues that his due process rights were violated because the district court's reasons for revoking his probation—that he was under the influence of an unknown substance or was under the influence of prescribed medication that he was misusing—were inconsistent with the State's purported basis of his probation violation—that he improperly possessed or consumed alcohol or drugs without a prescription. Whether Scott's due process rights were violated is a question of law over which we exercise unlimited review. See *State v. Hall*, 287 Kan. 139, 143, 195 P.3d 220 (2008).

"The Due Process Clause imposes procedural and substantive due process requirements whenever the State deprives someone of liberty, such as through the revocation of an individual's probation." 287 Kan. at 143; see also *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973) (probationers entitled to due process). Such due process rights include written notice of the probation violations alleged. 411 U.S. at 786; *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972) (due process requires written notice of alleged violations); K.S.A. 2016 Supp. 22-3716(b)(1) (probation officer shall submit written report detailing in what matter defendant has violated terms of probation). Moreover, fair notice, as a component of due process, requires sufficient specificity to allow the defendant to adequately respond. Parties receive less than constitutional due process if they, in fact, suffer deprivations based on grounds other than those of which they have been given notice. See *State v. Hagan*, No. 106,338, 2012 WL 5392105, *2 (Kan. App. 2012) (unpublished opinion) (due process violation for district court to revoke probation based upon reasons not contained in the warrant); *State v. Mireles*, No. 102,997, 2011 WL 135027, at *4 (Kan. App. 2011) (unpublished opinion) ("Once a court grants probation to a defendant, it cannot turn compliance into a guessing game.").

Here, Scott was given written notice of the claimed violation. The probation violation warrant alleged as follows:

> "That the defendant shall abide by the rule and regulations of said [community corrections] program, to include:

> "That the defendant shall not possess or consume any type of alcohol or drugs unless they are prescribed for him by a licensed physician.

> "The above-named defendant has violated the terms and conditions of supervision as follow(s), after having been convicted of the crime of Possession of Controlled Substance x2 (felony):

> "On 9/9/15, the defendant appeared to be under the influence of an unknown substance."

Scott does not challenge that he appeared to be impaired when he returned to the residential center but claims the State failed to prove that his impairment was a result of his possession or consumption of alcohol or drugs for which he did not have a valid prescription. We agree with Scott concerning what the State had to prove here.

The warrant alleged that Scott had violated a condition of probation which prohibited him from consuming or possessing any alcohol or drugs without a prescription and that such violation was committed by his act of being under the influence of an unknown substance. This means the State had to prove that Scott was under the influence of some unknown substance other than his prescription medication. We agree with Scott that merely proving he was under the influence of any substance was insufficient because the warrant did not allege that it was a condition of Scott's probation that he refrain from being under the influence of *any* substance.

7

As previously stated, the State has the burden to prove a probation violation by a preponderance of the evidence. See *Lloyd*, 52 Kan. App. 2d at 782. When reviewing the district court's factual findings, we are to be deferential, meaning such findings are to be upheld if there is substantial support for them in the record.

> "'Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated another way, substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. [Citation omitted.]'" *State v. Inkelaar*, 38 Kan. App. 2d 312, 315, 164 P.3d 844 (2007) (quoting *State v. Luna,* 271 Kan. 573, 574-75, 24 P.3d 125 [2001]), *rev. denied* 286 Kan. 1183 (2008).

In making this determination, we do not reweigh the evidence or reassess credibility. See *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016).

Here, the district court found that Scott was under the influence of an unknown substance. Scott argues there is no evidence to support this finding. We agree. While it is undisputed that Scott was impaired, all the evidence points to Scott being impaired by his prescription medication—either by using such medication properly or by using it improperly. While there is some evidence to suggest that Scott may have been under the influence of K2, the residential center's testing of Scott failed to show a positive result, likely due to the fact that the composition of K2 apparently changes, making testing for it ineffective. Accordingly, we find the record does not support the district court's finding that Scott was under the influence of an unknown substance—that is, a substance other than his prescription medication.

But the district court also found that Scott was under the influence due to his misuse of his prescription medication. Scott argues the district court "moved the goal posts" after he presented a defense he was under the influence of prescription medications

rather than alcohol or illegal drugs. Essentially, he claims he was misled into presenting an improper defense. We must agree. One of Scott's conditions of probation was that he not consume or possess any alcohol or drugs other than his prescription medication. While implicit in this condition was that Scott take his medication as prescribed, the State did not plead Scott's misuse of his prescription medication as a probation violation in the warrant. It accused Scott of being under the influence of an *unknown* substance, which is not the same as being under the influence of one's prescription medication. The State was aware of Scott's prescription medications; if the State wanted to revoke Scott's probation for misusing his prescription medication, due process required that Scott be put on notice of this. Because the State failed to plead this misuse in the probation violation warrant, the district court could not use Scott's misuse of his prescription medications as a basis to find him in violation of his probation.

Accordingly, we reverse the district court's order finding Scott in violation of the terms and conditions of his probation, as well as its order revoking Scott's probation, and remand the matter for further proceedings consistent with this order.

Reversed and remanded.

* * *

ATCHESON, J., concurring: The State gets to set the substantive terms and conditions probationers must satisfy to stay out of prison, and it gets to draft the warrants alleging violations of those conditions. Although the State holds all those cards, it has to put them on the table face-up, so probationers have fair notice of what they are required to do and how they have supposedly failed to comply. Those are obligations of constitutional magnitude, entailing due process rights guaranteed in the Fourteenth Amendment to the United States Constitution. Here, the Sedgwick County District Court found Defendant Gary Scott took his prescription medications other than the way his

9

physician directed. That's bad behavior, especially for someone like Scott who has chronically abused drugs. But it neither violates the terms and conditions of his probation nor conforms to the violation alleged in the warrant. Accordingly, I agree we should reverse Scott's probation revocation, and I would remand with a specific direction to the district court to reinstate the probation.

So far as the record on appeal reflects, the district court imposed standard terms and conditions of probation on Scott, including "[n]o possession or consumption of drugs or alcohol without a legal prescription from a physician." Scott's probation officer issued a warrant in September 2015 alleging Scott violated a condition of probation that he "not possess or consume any type of alcohol or drugs unless they are prescribed for him by a licensed physician." At the end of an evidentiary hearing, the district court concluded Scott had returned to the residential center, where he was living as part of the probation, "clearly under the influence . . . as I have determined [as] a result of knowingly misusing his prescribed medications." Based on that factual finding, the district court revoked Scott's probation and sent him to prison. The evidence supported the finding, but the finding did not establish the violation alleged in the warrant—that Scott possessed or consumed drugs that hadn't been prescribed for him. An in-the-ballpark association between the alleged violation and what the evidence shows isn't good enough.

Procedural due process rights attach to probation and revocation proceedings. *Gagnon v. Scarpelli*, 411 U.S. 778, 781-82 & n.4, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). Due process takes no fixed form and must be shaped to fit the nature of the government action and the substantive liberty interest or property right at stake by affording procedures sufficient to protect against a wrongful deprivation commensurate with the circumstances. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 17-18, 98 S. Ct. 1554, 56 L. Ed. 2d 30 (1978) (due process entails protection against wrongful deprivation); *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a

10

meaningful time and in a meaningful manner.' [Citations omitted.]"); 424 U.S. at 348-49 (due process requires procedures "be tailored" to the circumstances to "assure fair consideration"). Some proceedings, such as a criminal prosecution that may result in a significant deprivation of liberty, call for quite elaborate due process protections. A probation or parole revocation hearing requires less stringent procedures. *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972).

A cornerstone of procedural due process is fair notice of the impending government action. *Memphis Light, Gas & Water Div.*, 436 U.S. at 14 ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'"). Probation revocations are no exception. *Morrissey*, 408 U.S. at 489 (At a minimum, constitutional process due a parolee facing revocation includes "written notice of the claimed violations[.]"); *State v. Billings*, 30 Kan. App. 2d 236, 238, 39 P.3d 682 (2002) (same, probation hearing). Fair notice, as a component of due process, is not itself particularly flexible in the sense that a government entity might provide a comparatively generic or vague statement of the reasons for its intended course of conduct depending on the interest at stake. Parties facing deprivations cannot adequately respond to indistinct notification. By the same token, parties receive less than constitutional due process if they, in fact, suffer deprivations based on grounds other than those of which they have been given notice. See *State v. Hagan*, No. 106,338, 2012 WL 5392105, at *2 (Kan. App. 2012) (unpublished opinion) (Citing due process protections, this court holds the district court erred in revoking probation for a reason not contained in the warrant.); *State v. Mireles*, No. 102,997, 2011 WL 135027, at *4 (Kan. App. 2011) (unpublished opinion) ("Once a court grants probation to a defendant, it cannot turn compliance into a guessing game.").

Probationers are entitled to terms and conditions of probation that clearly and directly define what they are to do or refrain from doing to comply. Anything less is a due process violation. 2011 WL 135027, at *4 ("An ill-defined condition of probation

11

violates a defendant's due process rights."); see *State v. Walker*, 260 Kan. 803, 810, 926 P.2d 218 (1996) (indicating probationer should be afforded opportunity to show that he or she "was not fully aware that his [or her] conduct was in violation of the rules"); *United States v. Loy*, 237 F.3d 251, 267 (3d Cir. 2001) (A term of conditional release imposed on a defendant "violates due process by failing to provide [him or her] with adequate notice of what he [or she] may and may not do."). Here, the underlying condition of Scott's probation doesn't plainly cover taking otherwise properly prescribed medications in a manner other than directed. The condition prohibited Scott from having or taking drugs (or alcohol) that had not been prescribed for him. We can't fairly infer from that condition a prohibition on taking prescribed medicines other than directed, even though such a prohibition might have been a reasonable one to impose in this case. Had the district court intended to include misuse of prescription drugs, the condition would have been relatively easy to craft: Scott shall possess only drugs or alcohol a physician has prescribed for him and shall consume them only as prescribed.[*]

[*]I don't know why the probation condition addresses only drugs or alcohol that had not been prescribed. But a condition requiring prescription drugs be used only as directed opens the door to a wide range of violations that arguably would be, at best, technical, *e.g.*, forgetting to take one dose or doubling up doses after missing one.

The parties have focused their attention on the violation alleged in the warrant. That, too, presents a material due process problem. The violation is set forth as a failure to comply with the condition that Scott not consume or possess drugs unless they had been prescribed for him. In other words, stated affirmatively, the warrant alleges Scott possessed or used drugs that had not been prescribed for him. He and his lawyer prepared for and responded to that allegation. The district court, however, found Scott misused drugs that had, in fact, been prescribed for him. What the warrant alleged and what the district court found are two different things. And the differences are substantive, not merely minor discrepancies. For example, had the warrant alleged Scott stole a 2012 Ford Mustang on September 22, 2015, and the evidence at the hearing actually showed the

12

stolen car to be a 2012 Chevy Camaro, I don't think the variance would have deprived him of fair notice unless he could demonstrate some sort of actual prejudice. At the hearing, the evidence indicated—and the district court determined—Scott likely appeared intoxicated because he had taken too much of his prescription medications in too short a time rather than by improperly acquiring and taking drugs he had no business possessing at all. The district court's shift from the charged violation undercut a material part of Scott's defense, resulting in actual prejudice.

As I said at the outset, Scott shouldn't have been abusing his medications. And he ought to be discouraged from such deleterious behavior. But that behavior did not fall within the allegation of the warrant and, therefore, could not have been a constitutionally proper basis for revoking his probation. Judge Powell details Scott's earlier problems on probation and the repeated opportunities the district court gave Scott to get it right. Scott obviously didn't. Those failures might make him a ne'er-do-well or a delinquent in some people's eyes. But ne'er-do-wells and delinquents get no less due process than anyone else. Scott didn't receive the process he was constitutionally due. I, therefore, agree Scott's probation revocation should be reversed.